Carlos SALAZAR, Appellant,

v.

The STATE of Texas, Appellee.

No. 298–88.

Court of Criminal Appeals of Texas,
En Banc.

Oct. 30, 1991.

Rick Bowman, Fort Worth (Court-appointed), for appellant.

Tim Curry, Dist. Atty., and C. Chris Marshall and Betty Stanton, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION AFTER REMAND

MILLER, Judge.

Appellant was convicted by a jury of aggravated robbery. V.T.C.A. Penal Code, § 29.03(a)(2). After the finding of guilty, the jury assessed appellant's punishment at forty years confinement in the Texas Department of Corrections[1].

Appellant then filed an appeal with the Second Court of Appeals raising eight points of error. The court of appeals overruled appellant's points and affirmed his conviction. *Salazar v. State*, 745 S.W.2d 385 (Tex.App.—Fort Worth 1987). Subsequently, appellant filed a motion for rehearing raising six points of error and, in response, the court of appeals withdrew its original opinion and abated the appeal for a trial court hearing in conformity with the decision in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (hereinafter referred to as *Batson*). After the trial court rendered findings of fact and conclusions of law, the State filed a post-submission brief to which the appellant responded. In his response, appellant raised eight points of error alleging *Batson*-type error revealed by the hearing. The court of appeals addressed two of the

alleged points of error and re-affirmed the conviction. Thereafter, appellant filed a second motion for rehearing raising fifteen points of error, ten of which stemmed from the *Batson* hearing. The second motion for rehearing was granted[2] and the conviction was again affirmed.

On June 8, 1988, we granted appellant's petition for discretionary review to address nine grounds, numbers two through ten, in which appellant claimed violations of his constitutional rights under the equal protection guarantees of the Fifth Amendment to the United States Constitution as applied through the Fourteenth Amendment and interpreted in *Batson*.

In our opinion of June 13, 1990, grounds for review numbers two through five, in which appellant contended that the court of appeals erred in failing to address alleged procedural errors[3] in the *Batson* hearing conducted by the trial court, were sustained. *Salazar v. State*, 795 S.W.2d 187, 193 (Tex.Crim.App.1990). Appellant's sixth ground was rendered moot by our disposition of his fifth ground. *Id.* In his seventh ground for review, appellant contended the court of appeals erred in failing to hold, because it did not address the issue, that the trial judge's actions during the *Batson* proceeding denied him the effective assistance of counsel. We found this ground to be moot due to the remedy which a remand of this cause would provide. *Id.* at 194.

Grounds for review eight, nine, and ten were interrelated and alleged, respectively, that the court of appeals erred in holding: (1) that appellant failed to establish a prima facie case of racial discrimination by the prosecutor's use of peremptory strikes; (2) that the court erred in failing to hold the prosecutor's use of a peremptory strike to exclude a venireperson of appellant's race

---

1. Now the Texas Department of Criminal Justice, Institutional Division.

2. The motion was granted on a non-*Batson* issue, namely: whether the trial court committed fundamental error in charging the jury on the parole law at the punishment phase.

3. The procedural errors consisted of: (1) failing to hold the *Batson* hearing in a public place

(hearing conducted in Judge's chambers); (2) refusal to allow the defense to cross-examine the prosecution; (3) refusal to allow the defense to cross-examine the prosecution for purposes of creating a bill of exceptions or offer of proof; and, (4) failure to provide the juror information forms used by the prosecution at trial.

is *Batson* error; and (3) that the court erred in failing to hold the prosecutor's use of peremptory strikes against the minority members of the venire constituted *Batson* error.

On the basis of the evidence from the first *Batson* hearing, we held appellant had established a prima facie case of discrimination. *Id.* at 193. At the time of our decision, defendant, in order to establish a prima facie case, needed to show [4]: (1) he is a member of a cognizable racial group [5]; (2) the prosecutor exercised peremptory challenges to remove from the venire members of the defendant's race (relying on the principle that peremptory challenges constitute a jury selection practice which permits those to discriminate who are of a mind to discriminate); and (3) these facts and any other relevant circumstances raise an inference the prosecutor used the peremptory challenges to exclude the veniremembers on account of their race. *Keeton v. State*, 724 S.W.2d 58 (Tex.Crim.App. 1987) (hereinafter cited as *Keeton I*). Appellant is a hispanic. The venire consisted of only one hispanic person, Ms. Catalina Gonzalez, and she was peremptorily struck by the State. Although striking a single juror does not, alone, make out a prima facie case of discrimination, a prima facie case *was* made when the State peremptorily struck Ms. Gonzalez as she represented 100% of the venirepersons who were of appellant's race. Thus, appellant made out a prima facie case, and appellant's eighth ground was sustained. Because the trial court committed procedural errors in the conduct of the first *Batson* hearing, a remand of the cause for a proper hearing was necessary.

We did not, however, address appellant's ninth ground for review [6] because the record from the first *Batson* hearing was insufficient to determine whether appel-

lant's claim was meritorious. *Salazar*, at 194. The trial court, in failing to allow cross-examination of the prosecution, did not, for *Batson* purposes, allow appellant to sufficiently explore the prosecutor's reasons for his strikes. The remand with orders to conduct a proper *Batson* hearing remedied this defect. Therefore, it is now appropriate that we address appellant's ninth ground for review.

Likewise, in our initial review of the cause, appellant's tenth ground was not addressed because the issue, originally raised on direct appeal and decided by the court of appeals, was improvidently granted. Appellant's tenth ground was a blended argument complaining of the State's exclusion of blacks and hispanics from his venire. Appellant, at the time of our decision, lacked standing to assert *Batson* error predicated upon the exclusion of persons of race or ethnicity different from his own. *See, Holland v. Illinois*, 493 U.S. 474, 110 S.Ct. 803, 805, 107 L.Ed.2d 905 (1990); *Batson, supra*, 476 U.S. at 96, 106 S.Ct. at 1723. Thus, since the sustaining of appellant's second through fifth and eighth grounds already entitled him to a second *Batson* hearing, and since *Batson* did not provide a remedy for challenges based upon the exclusion of veniremembers of other minority groups, our grant of appellant's tenth ground was improvident.

Nonetheless, the intervening months have seen an extension of the *Batson* standard to encompass claims made by defendants of all races. The United States Supreme Court, in *Powers v. Ohio*, —— U.S. ——, 111 S.Ct. 1364, 1373, 113 L.Ed.2d 411 (1991), empowered defendants of *all* races with standing to challenge racially motivated venire strikes. It is no longer necessary that a defendant, when attempting to make out his or her prima facie case of discrimi-

---

**4.** As we recognized in *Dewberry v. State*, 776 S.W.2d 589, 591 (Tex.Crim.App.1989), the initial burden in establishing a prima facie case of discrimination is not onerous.

**5.** As discussed *infra* at p. 407, the Supreme Court has expressly abolished the requirement that the defendant and the struck veniremembers be of the same race or ethnicity. *See,*

*Powers v. Ohio*, —— U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).

**6.** Appellant's ninth ground for review alleged that the court erred in failing to hold that the prosecutor's use of a peremptory strike to exclude a venireperson of appellant's race was *Batson* error.

nation in jury selection, share the excluded venirepersons' skin color or ethnic background. *See, id.* The defendant, attempting to make out a prima facie case, must simply show that the prosecutor has used peremptory strikes against minorities and that the attendant circumstances raise an inference of discrimination. The High Court reasoned that the defendant acts to protect the third-party equal protection claims of excluded jurors who would otherwise lack standing to assert a claim of racial discrimination. *Id.* In order to bring an action on behalf of a third-party, three criteria must be satisfied:

> the litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute, [citing *Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 2873, 49 L.Ed.2d 826 (1976)]; the litigant must have a close relation to the third party, [*id.*, at 113–114, 96 S.Ct., at 2873–2874, 49 L.Ed.2d 826]; and there must exist some hindrance to the third party's ability to protect his or her own interests.

*Id.* 111 S.Ct. at 1370–1371.

In *Powers*, the Supreme Court found that these criteria were met and the defendant, a caucasian, was allowed to bring a claim of racially motivated strikes on behalf of excluded black veniremembers. *Id.* Like a plaintiff in a civil case who brings a claim under the aegis of the Equal Protection Clause, the connection between the defendant and excluded venirepersons is not tenuous. First, a criminal defendant "suffers a real injury when the prosecutor excludes jurors at his or her own trial on account of race" because the resulting jury gives the impression that the trial was not fair and in accordance with the law. *Id.* at 1372. Second, the relation between the defendant and the third-party is very close because "[b]oth the excluded juror and the criminal defendant have a common interest in eliminating racial discrimination from the courtroom." *Id.* Last, the "barriers to a suit by an excluded juror are daunting" and it is unlikely that a claim would be brought except by the defendant. *Id.* at 1372–1373.

Conceptually, there is no distinction between a white asserting the third-party claims of blacks excluded from a venire and a hispanic asserting those same claims; thus, *Powers* is applicable, and appellant's tenth ground is ripe for review. We therefore will now address both appellant's ninth and tenth [7] grounds for review in light of the trial court's findings of facts and conclusions of law.

## BATSON ANALYSIS

█ In addressing *Batson* issues, this Court expressly adopted the "clearly erroneous" standard as the standard of appellate review. *Whitsey v. State*, 796 S.W.2d 707, 726 (Tex.Crim.App.1990) (Opinion on State's Motion for Rehearing). Briefly stated, this standard is one in which the appellate court is to review the trial judge's findings of fact to determine whether they are adequately supported by the record. *Id.* In so doing, the reviewing court must consider the evidence in the light most favorable to the trial judge's rulings. *Keeton v. State*, 749 S.W.2d 861, 870 (Tex. Crim.App.1988) (Opinion after Abatement) (Hereinafter cited as *Keeton II* )[8].

█ With this standard in mind, we have undertaken an exhaustive review of the

---

7. We have decided to review appellant's tenth ground on our own motion. Tex.R.App.P. 200(a). In footnote 14 of our prior opinion in this cause, we recognized that the concurring and dissenting opinions in *Holland v. Illinois*, 493 U.S. 474, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990), indicated a trend by the Supreme Court, ultimately explicated in *Powers v. Ohio*, — U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), towards allowing cross-racial *Batson* challenges. Appellant's arguments were more fully developed at the *Batson* hearing and will now be addressed in light of *Powers.*

8. The holding in *Whitsey* expressly modified the holding in *Keeton II* to adopt the "clearly erroneous" standard of review found in Rule 52(a) of the Federal Rules of Civil Procedure. This modification did not, however, lessen the degree of deference accorded the findings of the trial judge. The trial judge is, of course, far more able to analyze the reasons given by the prosecutor for his or her strikes. Reviewing only a cold record, we will not, therefore, disturb the findings of the trial judge as long as they are not clearly erroneous.

record below. The record in the present cause reflects that the venire consisted of forty-two persons of which thirty-eight were white, three were black and one was hispanic. As noted above, during voir dire, the prosecution peremptorily struck all three black venirepersons and the lone hispanic venireperson. Further, the effect of these strikes was a total elimination of minorities from the venire. We have, on original submission, determined that a prima facie case of discrimination had been made. Our focus, then, shifts to an examination based on the second and third parts of the *Batson* analysis, *viz:* whether the State has met its burden of production to adequately provide race-neutral explanations for its strikes, and, if so, whether the defense has carried the burden of persuasion to rebut these explanations. *Williams v. State*, 804 S.W.2d 95, 101 (Tex.Crim.App. 1991).

In answering these questions in the case *sub judice*, we reviewed the original statement of facts (containing the voir dire of the prospective jurors) in concert with the supplemental statement of facts, *infra*, developed at the second *Batson* hearing.

Upon remand by this Court, the trial court conducted a second *Batson* hearing in which the following pertinent findings of fact and conclusions of law were entered:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW [9]

\* \* \* \* \* \*

14. [The hearing] ... was held in open court with unlocked doors and spectators were present in the courtroom.

\* \* \* \* \* \*

17. Because the hearing was held five years after the trial, both Mr. Gill and Mr. Hase [prosecutors at appellant's trial] had difficulty remembering the exact reason for all of their strikes. Both relied on the remaining notes which they

could locate, as well as on what memory remained after the passage of time.

18. Because of the five-year lapse in time, and because the decision in *Batson v. Kentucky*, 106 S.Ct. 1712 (9186) [sic] post-dated the trial, Mr. Gill did not preserve the original information forms regarding the four members of the venire whom the State struck and who were members of cognizable minority groups. (Supplemental Statement of Facts Vol. 2, page 29–30)

19. The passage of time and loss of notes placed both the State and the defense at a disadvantage and impeded their ability to present evidence in the hearing.

20. The strategy of the State appeared to be a simple strategy of picking the best possible jury without specific intent to discriminate or not to discriminate against anyone. (Supplemental Statement of Facts, Vol. 2, page 18)

21. This court finds that to the best recollection of Mr. Gill and Mr. Hase, *strikes they exercised against the four veniremen who were members of cognizable minority groups were exercised for race-neutral reasons and that there was no purposeful or deliberate attempt to strike any person based on race, nor on ethnicity.*

\* \* \* \* \* \*

The court then analyzed, in turn, each strike of a venireperson from a cognizable ethnic group. This analysis compared the reasons given for not striking whites of certain occupations, religions and educational backgrounds with the strikes used against similarly situated minorities. The court found from this analysis that:

\* \* \* \* \* \*

26. ... the State did not systematically exclude members of any cognizable group from the jury on the basis of race in the instant case.

27. The Court also finds that the explanations offered by the State for peremptorily striking venireman [sic] Catalina

---

9. Unless otherwise noted, all emphasis in the findings of fact and conclusions of law has been added by the author.

Gonzalez, Joe Nathan Gilliam, Betty Richardo and Jerelene Irvin were racially and ethnically neutral.

28. The Court further finds that the delay between trial and hearing clouded the memory of both Mr. Hase and Mr. Gill, and such delay also resulted in the loss of notes which might better have explained the bases of the strikes. *Although this court does not necessarily agree with the reasoning of the prosecution concerning the veniremen, the Court finds that the conclusions reached were sincere on the part of the prosecution, especially in light of the testimony of Judge Clifford Davis, presiding judge at the trial in this case.*

29. The Court further finds that the strikes were made on the basis of trial strategy dealing with the anticipated defense at punishment and in light of the prosecutors' attitudes toward certain professions.

### CONCLUSIONS OF LAW

1. Both the State and the defense agreed that a prima facie showing of discrimination by the State in the jury selection process had been made by the defense. This court concludes that the defense made a prima facie showing of discrimination by the State in the jury selection process. (Supplemental Statement of Facts, Vol. 2, page 3)

2. This Court also concludes that the prosecution in the instant case *did not exercise its peremptory challenges in a discriminatory manner to exclude venire persons [sic] based upon either racial or ethnic considerations, nor did the State purposefully or deliberately deny jury participation of any person because of race or ethnicity.*

\*    \*    \*    \*    \*    \*

On remand, the second, procedurally correct, *Batson* hearing revealed non-discriminatory explanations for the strikes which were accepted by the presiding judge. No evidence was offered which would clearly rebut those explanations, and we cannot say that the findings made by the trial judge concerning those explanations are unsupported. *Cf., Whitsey.* In such a situation, we defer to the findings made at the hearing. Thus, viewing the evidence contained in the record in the light most favorable to the findings made by the trial judge, we hold that the trial judge's determination that the State's peremptory strikes were not racially motivated is not clearly erroneous. Appellant's ninth and tenth grounds are overruled.

Accordingly, the judgment of the court of appeals is affirmed.

McCORMICK, P.J., and CAMPBELL, WHITE, BAIRD and BENAVIDES, JJ., concur in the result.