James WYLE, III, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–90–00339–CR.

Court of Appeals of Texas,
El Paso.

Aug. 19, 1992.

Dolph Quijano, Jr., El Paso, for appellant.

Steve W. Simmons, Dist. Atty. of El Paso County, El Paso, for appellee.

Before OSBORN, C.J., and KOEHLER and BARAJAS, JJ.

## OPINION

BARAJAS, Justice.

This is an appeal from a conviction of capital murder which resulted in the assessment of a life sentence. In two points of error, James Wyle, III, Appellant, seeks review of the trial court's judgment by challenging the State's allegedly improper exercise of two peremptory strikes. Due to the nature of these points of error, a synopsis of the underlying facts is not necessary, and we will address both points simultaneously. We affirm.

In both points of error, Appellant argues the trial court's denial of his *Batson*[1] challenge to the State's peremptory challenges and subsequent excusing of two black veniremembers was error. In *Powers v. Ohio*, 499 U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), the Supreme Court has reaffirmed that an accused is entitled to a trial by a jury whose members were selected on a racially-neutral, nondiscriminatory basis. The proper standard of review will be set out as we discuss the merits of Point of Error No. One and will be similarly applied to the merits of Appellant's complaint in Point of Error No. Two.

■ Initially, it is incumbent upon Appellant, if he is to be successful, to provide a record illustrating the trial judge's findings are clearly erroneous. *Williams v.*

*State*, 804 S.W.2d 95, 101 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991). *See also generally, Lemon v. State*, 837 S.W.2d 163, 167–68 (Tex.App.—El Paso 1992, pet. filed). The record is viewed in the light most favorable to the trial judge's ruling, and if the findings are supported by the record, the trial judge's ultimate conclusion that the prosecution exercised its peremptory challenges with no purposeful discrimination will not be found to be clearly erroneous. *Cantu v. State*, No. 70,739, slip op. at 31, 1992 WL 116290 (Tex.Crim.App. June 3, 1992); *Williams*, 804 S.W.2d at 101. As propounded in *Williams*, such a review is conducted in three steps. First, did the accused introduce sufficient evidence at a *Batson* hearing to establish a prima facie case of the State's purposeful discrimination? Second, if so, did the State rebut the accused's prima facie case with a neutral explanation? Lastly, if the prima facie case is adequately rebutted by the State, did the accused meet his continued burden to persuade the court, by a preponderance of evidence, by countering the State's proposed neutral, nondiscriminatory explanation. *Williams*, 804 S.W.2d at 101. In sum, we must, if properly preserved, review the record to determine whether the State's explanations "were indeed race neutral on their face," and if so, whether evidence to the contrary persuasively demonstrates the State's "utilization of the jury strikes were nothing more than a pretext for the racially motivated exercise of the peremptory challenge...." *Id.* at 102. *See also* Tex.Code Crim.Pro.Ann. art. 35.-261 (Vernon 1989).

■ In order to establish a prima facie case, Appellant must show: (1) the excused veniremember was a member of a minority; and (2) other relevant circumstances which raise an inference of discriminatory use of peremptory challenges. *Salazar v. State*, 818 S.W.2d 405, 408 (Tex.Crim.App.1991); *Lemon*, 837 S.W.2d at 168.[2] The record

---

1. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

2. Formerly, the accused had to show he was a member of the excused veniremember's race.

illustrates Appellant is a black male. The State does not challenge Appellant's assertions to the trial court that the excused veniremembers were also black; thus, establishment of a prima facie case that the State utilized discriminatory criteria in the selection process is deemed by default. *Lemon*, 837 S.W.2d at 168; *Jones v. State*, 795 S.W.2d 32, 34 (Tex.App.—Houston [1st Dist.] 1990), *aff'd*, 818 S.W.2d 532 (Tex.Crim.App.1991).[3]

Accordingly, the burden of production shifted to the State to rebut the prima facie showing with a neutral explanation for striking the venireman. *Salazar*, 818 S.W.2d at 409. At this point, the issue is the facial validity of the prosecutor's explanation which will be deemed race neutral unless a discriminatory intent is inherent in the explanation. *Hernandez*, —— U.S. at ——, 111 S.Ct. at 1866, 114 L.Ed.2d at 406. Regarding Appellant's first point of error, the prosecutor iterated to the court that the reason venireman Walter Keys was struck was because he stated that, under no circumstances, would he assess the death penalty to a member of a minority. The prosecutor elaborated in that Keys had "done some independent research concerning the death penalty and found out that minority groups were the ones that, ... were more likely [to receive] the sentence of death in almost all the states and therefore we felt that his response to that question that under no circumstances he would give the death penalty, that he had a bias against the State and a prejudice against the State and against the law...."

After the State asserted its racially neutral reason for excluding the venireman, the burden of persuasion rested on Appellant to prove by a preponderance of evidence the invalidity of the State's explanation. *See Salazar*, 818 S.W.2d at 409. Appellant responded that he had rehabilitated the veniremember in that Mr. Keys stated he would be able to assess the death penalty "should the facts warrant it and should the State meet its burden of proof." Appellant also pointed out that he believed Mr. Keys statement regarding the disproportionate application of the death penalty was based merely on common knowledge. Not having been persuaded, the trial judge denied Appellant's *Batson* challenge and concluded that Mr. Keys changed his mind regarding the potential assessment of the death penalty "only after astute counsel for defense reminded him he was not serving his race at all by disqualifying himself [from] the jury." As such, the court found the State had articulated an "explanation on the strike that is completely different from the grounds of the race even though race is involved in the man's reasoning and his justifiable and quite obvious hostility towards what's happening...."

As previously stated, Appellant, if he is to be successful, must provide a record illustrating the trial judge's findings are clearly erroneous. *Williams*, 804 S.W.2d at 101. The trial court accepted the explanation of the State as one based upon racially neutral grounds. Since the best evidence from which to make this determination is the demeanor of the prosecutor, the trial judge is peculiarly situated to ascertain the credibility of the prosecutor; therefore, the court's ruling is given great deference. *Hernandez*, —— U.S. at ——, 111 S.Ct. at 1869, 114 L.Ed.2d at 409; *Cantu*, slip op. at 32–3. Since the decision to strike a particular veniremember is a fluid process and not susceptible to rigid quantification, the trial court's denial of a *Batson* challenge will not be found clearly erroneous unless the record persuasively indicates that the prosecutor's explanation was undermined to the extent that the trial court's ruling was unreasonable. *See Cantu*, slip op. at 32–3.

In regard to Mr. Keys, the veniremember stated repeatedly, during individual voir

See *Rousseau v. State*, 824 S.W.2d 579, 584 n. 9 (Tex.Crim.App.1992).

3. Furthermore, once a prosecutor goes on record to offer a race-neutral reason for the juror's exclusion, the preliminary issue of whether the accused established a prima facie showing of intentional discrimination becomes moot. *See Hernandez v. New York*, 500 U.S. ——, ——, 111 S.Ct. 1859, 1865–66, 114 L.Ed.2d 395, 405 (1991).

dire, that he would neither sentence nor vote to sentence a minority member to death. In his attempt to rehabilitate Mr. Keys, Appellant asked whether he "would never be able to answer [the capital punishment questions] based on the evidence" in relation to a minority defendant. The response was "I have a problem with it." In a further attempt to rehabilitate Mr. Keys, Appellant stated that in order to qualify him as a juror, he must assure the court that he could follow the law and answer the questions "Yes" without regard to Appellant's minority status if the State proved its case beyond a reasonable doubt. Keys stated, "[y]eah, I could do it." Since the State had not levied a challenge for cause against Keys, Appellant sought to persuade the trial court that the State's assertion of a bias in its proposed racially neutral explanation was a "sham." Otherwise, Appellant did not further seek to persuade the court that the State's peremptory strike was purposefully discriminatory.

■ Generally, it is proper to exclude a veniremember by *peremptory*[4] strike due to opposition to the death penalty even if such a belief would not necessarily impair the person's ability to perform the duties of the office of a juror. *Tompkins v. State*, 774 S.W.2d 195, 203 (Tex.Crim.App.1987), *aff'd*, 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989). As did the Court of Criminal Appeals in *Williams*, we find the instant record indicates the challenged veniremember expressed a viewpoint in opposition to infliction of the death penalty. 804 S.W.2d at 106. This is a plausible, race neutral reason to exclude a potential juror through the use of peremptory strikes. *See Id.* Viewing the record in the light most favorable to the trial court's ruling, we conclude the record does not illustrate Appellant sufficiently undermined the State's neutral explanation so as to require a finding that the trial court's ruling was unreasonable and thus clearly erroneous.

*Cantu*, slip op. at 31, 33. As a result, Point of Error No. One is overruled.

■ In regard to the second point of error, Appellant challenges the trial court's ruling as to the exclusion of venirewoman Mary Anderson. In response to the trial court's request that the State explain its strike of Ms. Anderson, the prosecutor stated the venirewoman's indication that a juror should not have the power to cause the death of a person illustrated she was technically against the death penalty in principle. To bolster his reason, the prosecutor asked the court to note the State had struck all prospective jurors who continued to indicate opposition to the death penalty. The record does support that Ms. Anderson described her opposition to the death penalty by saying, "I just don't think I should have that much power." On its face, we conclude the State's reason was racially neutral and no discriminatory intent is inherent therein. *Hernandez*, — U.S. at —, 111 S.Ct. at 1866, 114 L.Ed.2d at 406. As a result, the burden shifted to the Appellant to persuade the trial court by a preponderance of evidence the invalidity of the State's explanation. *See Salazar*, 818 S.W.2d at 409.

Appellant's counsel rejoined the State's argument by contending Ms. Anderson's ultimate response that if the twelve jurors reached the right decision, she could live with the fact that the accused received the death penalty. Thus, Appellant's counsel argued Ms. Anderson could follow the law just as well as another black venirewoman, Ms. Edmond, who the State had not struck. According to Appellant, Ms. Anderson had been rehabilitated similar to the State's rehabilitation of Ms. Edmond regarding her stance on the death penalty. Appellant asserts the State's allegedly inconsistent treatment of two similarly situated members of a racially cognizable minority requires a finding of purposeful discrimina-

---

**4.** Appellant relies upon *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), to assert the State may not exclude a prospective juror for expressing conscientious scruples concerning the imposition of the death penalty unless such views would substantially impair the juror's performance as per the court's instructions and oath of a juror. Appellant's reliance is misplaced because the *Wainwright* holding applies only to such improper exclusion in relation to a challenge for *cause*.

**800**

tion. To the contrary, the State's acceptance of one similarly situated juror while it struck a venirewoman of the same racial group implies the State was simply not convinced by the juror it struck regarding this particular qualitative distinction as to her ability to put aside her opposition to the death penalty and answer the questions based solely on the evidence. We conclude the argument is not so persuasive that the court's acceptance of the State's strike was unreasonable. *See Cantu,* slip op. at 33.

Appellant's argument is best characterized as a challenge to the prosecutor's integrity and credibility in evaluating the whole of the individual voir dire of the respective venirewomen. Since the trial judge was best situated to assess the credibility of the prosecutor and his explanations, he is afforded great deference. *Cantu,* slip op. 32–3. In that the trial court was faced with two equally permissible views of the evidence regarding the State's proposed qualitative distinctions between the two prospective jurors, we cannot conclude the fact finder's choice was unreasonable and thus clearly erroneous. *See Hernandez v. State,* 808 S.W.2d 536, 544 (Tex. App.—Waco 1991, no pet.) *citing Whitsey v. State,* 796 S.W.2d 707, 722 (Tex.Crim. App.1990). Having dispelled Appellant's sole reason given the court to rebut the State's explanation for the use of a peremptory strike against Ms. Anderson, we overrule Point of Error No. Two.

Having overruled both of Appellant's points of error, we affirm the judgment of the trial court.