**David K. MOCK, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–91–00406–CR.**

Court of Appeals of Texas, El Paso.

Dec. 30, 1992.

Discretionary Review Refused May 12, 1993.

Thomas S. Morgan, Midland, for appellant.

J.W. Johnson, Jr., Dist. Atty., Ft. Stockton, for appellee.

Before KOEHLER, BARAJAS and LARSEN, JJ.

## OPINION

BARAJAS, Justice.

This is an appeal from a judgment of conviction for the offense of attempted capital murder. Trial was by jury. Upon a finding of guilty, the jury assessed punishment, as enhanced, at life imprisonment in the Institutional Division of the Texas Department of Criminal Justice. In ten points of error, Appellant challenges the judgment of conviction. Specifically, Appellant challenges the trial court's rulings as to the indictment, a peremptory strike, the admission of evidence, the jury charge and the prosecutor's conduct. We affirm the judgment of the trial court.

## I. SUMMARY OF THE EVIDENCE

The extensive record in the instant case shows that on December 11, 1990, Appellant was patronizing Sandy's Lounge, a popular night spot in Fort Stockton, Texas. Appellant, identified by the numerous tattoos on each of his arms, remained on the premises for approximately twenty to thirty minutes prior to leaving at about 8 p.m. Shortly after Appellant left the bar, an individual was seen outside the bar "messing" with vehicles parked at the bar. The individual, seen outside with a gun, was further seen leaving the parking lot in a small light-colored pickup truck. After the individual left the scene, another bar patron went outside to inspect his vehicle and discovered that a tire tool or screwdriver had been used to pry open the small air vent window of his pickup truck and further discovered that his .22 caliber rifle was missing from his vehicle. Local law enforcement officers were notified of the burglary of the vehicle. Pecos County Sheriff's Deputy Donald Stockburger was dispatched to Sandy's Lounge in reference to the burglary of the vehicle. Additionally, law enforcement officers were given a description of Appellant as well as the small light-colored vehicle which had earlier left the scene.

The record further establishes that Fort Stockton Police Officer Joe Pasqua, in responding to the police radio transmission of the description of the vehicle as well as of Appellant, saw the vehicle traveling through Fort Stockton. Officer Pasqua testified that the sole occupant of the vehicle attempted to cover his face with his hand to avoid detection. Officer Pasqua made radio communication with Deputy Stockburger and advised him that he was observing the vehicle in question and requested backup. Officer Pasqua testified that Appellant's vehicle turned into a dark, unlit area behind a local motel on the west side of Fort Stockton and suddenly came to a stop. Appellant immediately exited his vehicle and began to approach Officer Pasqua. Officer Pasqua further testified that as Appellant approached him, he noticed a screwdriver in Appellant's waistband area. Officer Pasqua removed the screwdriver

from Appellant's waistband and awaited the arrival of Deputy Stockburger.

The record further establishes that upon the arrival of Deputy Stockburger, Officer Pasqua began a weapons frisk after first directing Appellant to place his hands on the hood of the patrol car and spread his feet. During this process, Appellant withdrew a pistol and dropped it on the ground. A struggle ensued after Officer Pasqua attempted to move Appellant away from the pistol. The record further reveals that during the struggle, gunfire erupted. Officer Pasqua withdrew his revolver and returned fire while still on the ground on his backside.[1] Appellant got back into his vehicle and drove off.

Appellant was pursued by Corporal Dale Seago of the Fort Stockton Police Department, who arrived at the scene immediately after the shooting. Corporal Seago pursued Appellant's vehicle until it jumped a curb, collided with a telephone pole and came to a stop. Appellant exited his vehicle and was apprehended.

Appellant was indicted in the 112th Judicial District Court of Pecos County, Texas in Cause No. 1731 for the attempted capital murder of Fort Stockton Police Officer Joe Pasqua. Additionally, Appellant was indicted in the 112th Judicial District Court of Pecos County, Texas in Cause No. 1732 for the attempted capital murder of Pecos County Sheriff's Deputy Donald Stockburger. It is from his conviction for the attempted capital murder of Officer Joe Pasqua in Cause No. 1731 that Appellant has perfected his appeal.[2]

## II. DISCUSSION

■ In Point of Error No. One, Appellant argues the trial court erred in denying his motion to consolidate the trials for the offenses alleged in both the attempted capital murders of Fort Stockton Police Officer Joe Pasqua and Pecos County Sheriff's Deputy Donald Stockburger. Citing *Guia v. State*, 723 S.W.2d 763 (Tex.App.—Dallas 1986, pet. ref'd), Appellant urges that the offenses were all part of the same "criminal episode" as defined in Tex.Penal Code Ann. § 3.01 (Vernon 1974) and that Section 3.02(a) affords him an absolute right to consolidation of the offenses.[3] We find Appellant's reliance on *Guia* to be misplaced, and without deciding whether or not the offenses constitute the same "criminal episode," we further find that a criminal defendant, charged with multiple criminal offenses, has no statutory right to consolidated trials for those multiple crimes which the defendant is alleged to have committed.

In *Guia v. State*, the defendant was charged in one indictment with the offense of indecency with a child and in a second indictment with the offense of aggravated sexual assault. In a single trial conducted before a jury, the defendant was convicted of both offenses. The defendant in *Guia* asserted that the trial court erred in denying his *motion to sever*. The Dallas Court of Appeals agreed, holding that in the absence of an agreement to consolidate, a criminal defendant enjoys the absolute right to separate trials. *Id.* at 768, *citing Royal v. State*, 391 S.W.2d 410, 411 (Tex. Crim.App.1965); *see also* Tex.Penal Code Ann. § 3.04(a) (Vernon 1974). Moreover, Tex.Penal Code Ann. § 3.02(a), cited by Appellant as statutory authority mandating consolidation, is merely permissive in nature. *See Grice v. State*, 635 S.W.2d 890,

---

1. As a result of the gunfire, Officer Pasqua was shot once through the leg and once through the arm. An additional bullet struck the side of the leather gear worn by Officer Pasqua. Deputy Stockburger was shot in the back, left shoulder area with the bullet going through the body, through the windpipe and exiting in the right front part of the upper chest below the collarbone. Deputy Stockburger was also shot once in the wrist.

2. The instant case was transferred on a change of venue to the 51st Judicial District Court of Tom Green County, Texas. After the jury trial concluded in Tom Green County, the cause was transferred back to the 112th Judicial District Court of Pecos County, Texas, and Cause No. 1731 was reinstated.

3. Tex.Penal Code Ann. § 3.02(a) reads as follows:

 A defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode. [Emphasis added].

892 (Tex.App.—Dallas 1982, pet. ref'd). Since the statute is not mandatory, an accused is not entitled to consolidation of offenses, as a matter of right, and the trial court did not abuse its discretion by failing to grant Appellant's motion to consolidate. *Id.*

In the State of Texas, responsibility for criminal prosecutions is vested in the district and county attorneys. *See Meshell v. State,* 739 S.W.2d 246, 254 (Tex.Crim.App. 1987); *Ramirez v. State,* 842 S.W.2d 796 (Tex.App.—El Paso 1992, n.pet.h.); *State v. Gray,* 801 S.W.2d 10, 11 (Tex.App.—Austin 1990, no pet.). In the instant case, the decision to consolidate or not to consolidate Appellant's indictments for attempted capital murder was a matter of strategy, tactics and judgment decided upon by the District Attorney for the 112th Judicial District, subject only to an objection and motion to sever filed by Appellant. The District Attorney chose not to consolidate. Accordingly, Point of Error No. One is overruled.

■ In Point of Error No. Two, Appellant challenges the trial court's refusal to include the lesser included offense of reckless conduct in the court's charge to the jury. An accused is entitled to have lesser included offenses submitted to the jury if: (1) the lesser offense is included within the proof necessary to prove the offense charged; and (2) the record contains some evidence that if the accused is guilty, he is guilty only of the lesser offense. *Royster v. State,* 622 S.W.2d 442, 446 (Tex.Crim. App.1981). While reckless conduct may be a lesser included offense of attempted capital murder, submission of the issue is required only if the record contains some evidence that Appellant, if guilty, is guilty only of the lesser offense of reckless conduct. *Godsey v. State,* 719 S.W.2d 578, 584 (Tex.Crim.App.1986). "A person commits an offense if he recklessly engages in conduct that places another in imminent danger of serious bodily injury." Tex.Penal Code Ann. § 22.05(a) (Vernon 1989).

■ Examination of the record in the instant case reveals that Appellant's strategy at trial was to justify his act of shooting

the law enforcement officers by relying upon his testimony that he fired in self-defense only after he had been shot by one of the officers. Regardless of the veracity of Appellant's defensive theory, which was effectively disregarded by the jury as evidenced by their verdict of guilty, the consequence of Appellant's intentional act of shooting the officers was that both officers did in fact suffer serious bodily injury. Therefore, the evidence clearly illustrates that Appellant's intentional conduct went well beyond placing another in imminent danger of serious bodily injury. Once Appellant discharged his pistol and shot the officers, they were no longer merely in imminent danger of serious bodily injury— they in fact suffered the bullet wounds which gave rise to the indictments for the offense of attempted capital murder. Consequently, the record wholly fails to establish that Appellant, if guilty, was guilty only of reckless conduct. *Gibbs v. State,* 819 S.W.2d 821, 831 (Tex.Crim.App.1991); *Aguilar v. State,* 682 S.W.2d 556, 558 (Tex. Crim.App.1985).

Appellant cites *Hayes v. State,* 728 S.W.2d 804, 809–10 (Tex.Crim.App.1987) as authority in support of error being based on a trial court's failure to submit the reckless conduct charge. *Hayes,* however, is distinguishable from the instant case in that the defendant in *Hayes* testified "that the actual discharge of the gun was accidental...." *Hayes,* at 810. In the instant case, Appellant testified he believed his use of deadly force was immediately necessary to protect himself; thereby, nullifying any accidental or reckless discharge of his weapon. One cannot accidentally or recklessly act in self-defense. The record fails to set forth evidence which would tend to support any inference that Appellant was guilty only of the Class "B" misdemeanor offense of reckless conduct. *Godsey,* 719 S.W.2d at 584–85. Accordingly, *Hayes* is not controlling and for the reasons stated above, Point of Error No. Two is overruled.

■ In Point of Error No. Three, Appellant complains of prosecutorial misconduct regarding the prosecutor's cross-examination of Appellant as well as the prosecu-

tor's closing argument at the guilt/innocence phase of the trial. Initially, Appellant avers that the prosecutor's phrasing of questions to Appellant which served to impugn the veracity of Appellant's testimony given on direct examination and which served to challenge his credibility was reversible error. A defendant may be impeached the same as any other witness because his or her credibility as a witness is at issue the moment he or she takes the stand. *Pyles v. State*, 755 S.W.2d 98, 115 (Tex.Crim.App.), *cert. denied*, 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988). The trial court must exercise its discretion, however, to ensure that the State's impeachment efforts attack the defendant's credibility as a witness and not his or her character as an accused. *Nelson v. State*, 765 S.W.2d 401, 405 (Tex.Crim.App.1989). Such exercise of discretion is mandated in part by Tex.R.Crim.Evid. 610(a) which states the trial court "shall exercise reasonable control over the mode and order of interrogating witnesses...." *See also Matthews v. State*, 803 S.W.2d 347, 349 (Tex.App.—Houston [14th Dist.] 1990, no pet.).

■■■ In his brief, Appellant complains of several questions posed by the prosecutor. In order to preserve error, if any, a defendant must timely and specifically object, obtain an adverse ruling, request an instruction to disregard and move for a mistrial. *See Lasker v. State*, 573 S.W.2d 539, 543 (Tex.Crim.App.1978). In that regard, we address only those contested questions to which Appellant objected, secured a ruling, requested an instruction to disregard and moved for a mistrial. The record reveals the following exchange:

Prosecutor: Making the story that you are telling this jury is just a futile gesture on your part then, huh?
Appellant: No, sir; it's not. I'm telling the truth.

. . .

Prosecutor: And one more time, while this big officer has got his attention off of you and you do something with that gun then, that's what you want them to believe?

Appellant: Yes, sir.

. . .

Prosecutor: Tell me, if things happened like you say they did the first time you said they did, you couldn't have shot this tire, could you?
Appellant: Oh, I don't know. I suppose that I could have, sure.
Prosecutor: Well, no, you couldn't have because—

. . .

Prosecutor: You know, the other day, in here, you didn't—you weren't truthful with the jury when I asked you about why you—[cross-examination during the punishment phase].

We have carefully reviewed the full context of the testimony both prior to and after the above questions, and while the prosecutor may have been walking perilously close to the edge of a procedural cliff, we find that the prosecutor properly and legitimately phrased the questions in a leading fashion, as permitted by Tex. R.Crim.Evid. 610(b) and (c). The questions posed by the prosecutor made reference to the testimony of other witnesses which served to contradict Appellant's version of the facts on direct examination in a legitimate attempt to attack his veracity and impeach him on the issue of Appellant's credibility. *See generally, Hall v. State*, 685 S.W.2d 435, 438 (Tex.App.—Houston [1st Dist.] 1985, pet. ref'd). Furthermore, in several instances, the objected-to questions were followed by instructions by the court to disregard which, except in the most egregious of circumstances not found in the present case, would cure any impropriety. *See Livingston v. State*, 739 S.W.2d 311, 335 (Tex.Crim.App.1987), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988). Consequently, we conclude the trial court did not abuse its discretion in ruling adversely to Appellant's objections to the above questions.

Appellant's second argument in Point of Error No. Three attacks the propriety of the prosecutor's jury argument which allegedly injected the prosecutor's personal

opinion into the instant case. The two challenged arguments are as follows:

> And I submit he has been lying up right through his teeth the whole time just to avoid becoming convicted for this offense.
>
> . . .
>
> And then he wants you to believe he come [sic] up firing wildly, wildly enough to hit our officers every time he fired. And then he says he didn't even shoot Officer Pasqua. Didn't even know what happened to him. That's a lie. Blatant, bald-faced lie. . . .

Appellant's objections to the above arguments were overruled.

■ Proper jury argument is that which can be characterized as: (1) a summary of the evidence; (2) reasonable deductions from that evidence; (3) a response to argument of opposing counsel; or (4) a plea for law enforcement. *Borjan v. State*, 787 S.W.2d 53, 55 (Tex.Crim.App.1990); *Ledesma v. State*, 828 S.W.2d 560, 563 (Tex. App.—El Paso 1992, no pet.). When preserved, any error is reversible if the argument is found to be extreme, manifestly improper, violative of a mandatory statute or otherwise injects harmful new facts into the proceeding to the extent that the instruction is rendered meaningless. *Ledesma*, 828 S.W.2d at 563; *Gonzales v. State*, 807 S.W.2d 830, 835 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd).

■ As with the challenged cross-examination questions, Appellant has taken the specific statements of the prosecutor's argument out of context; thus, we find the cases cited by Appellant to be inapplicable.[4] It is well established that in developing a jury argument, a prosecutor is entitled to draw reasonable and legitimate inferences from the facts. *Allridge v. State*, 762 S.W.2d 146, 156 (Tex.Crim.App.1988), *cert. denied*, 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989); *Ledesma*, 828 S.W.2d at 563. When properly read in their entire-

ty, the contested portions of the argument were reasonable and legitimate inferences drawn from discrepancies contained in the record. *See generally, Allridge*, 762 S.W.2d at 156. Thus, we find that it was not error for the prosecutor to argue to the jury that Appellant had not told the truth in his testimony. *Bridges v. State*, 624 S.W.2d 718, 719 (Tex.App.—Houston [14th Dist.] 1981, pet. ref'd), *cert. denied*, 456 U.S. 1010, 102 S.Ct. 2304, 73 L.Ed.2d 1306 (1982).[5] Accordingly, the trial court did not err in overruling Appellant's objections to the above arguments. Point of Error No. Three is overruled in its entirety.

■ In his fourth point of error, Appellant complains of the prosecutor's request that the jury "examine" Appellant's demeanor during closing argument. Appellant, citing *Good v. State*, 723 S.W.2d 734, 735 (Tex.Crim.App.1986), contends that a jury should not be informed of the *prosecutor's impression* of guilt due to the accused's demeanor because the prosecutor's deduction of such guilt is not evidence. *See Id.*, at 734, 735. In *Good*, the Court of Criminal Appeals overruled *Langley v. State*, 129 Tex.Crim. 254, 86 S.W.2d 755 (1935), to the extent that the opinion found "no vice" in argument which thrust the prosecutor's notion of the accused's non-testimonial demeanor upon the jury. *Good*, at 736. Furthermore, the instant case is distinguishable from *Good* in that the prosecutor in the instant case did not request that the jury draw an inference of "guilty" simply from the accused's demeanor, as was the case in *Good*. *Id.* at 735. The prosecutor in the instant case merely argued, "you make it a point to check him out over here as he sits there. He has got a pretty straight face on the stand, but I would like you to watch him while I'm making certain points—." The instant argument simply fostered the jury's power, as acknowledged by the Court of Criminal Appeals, to "[observe] appellant's

---

4. Contrary to the arguments presented in *Villalobos v. State*, 568 S.W.2d 134 (Tex.Crim.App. 1978); *Clayton v. State*, 502 S.W.2d 755 (Tex. Crim.App.1973) and *Baldwin v. State*, 499 S.W.2d 7 (Tex.Crim.App.1973), the prosecutor in

the instant case did not refer to or comment on his personal belief regarding Appellant's guilt.

5. Citing *Simpkins v. State*, 590 S.W.2d 129 (Tex. Crim.App.1979).

general courtroom behavior and [draw] some conclusions from that behavior." *Id.* at 736 n. 3. Nothing in the challenged argument focused the jury's attention upon the prosecutor's personal impression of guilt which was to be derived from Appellant's demeanor. Thus, the argument was not improper, and we overrule Point of Error No. Four.

Point of Error No. Five avers that the trial court erred in admitting the testimony of a State's witness, allegedly in derogation of discovery orders which required the State to disclose the names and addresses of witnesses to be used in rebuttal. At the time the witness was called by the State, a hearing was held outside the presence of the jury in which the State's investigator testified that he had earlier read a complete list of the State's witnesses to Appellant's investigator. He further testified that the list which he read would have included the rebuttal witness in question because that same list was later used to obtain necessary subpoenas. After hearing this testimony as well as the testimony of Appellant's investigator, who denied having previously heard the name, the trial court overruled Appellant's objection and allowed the witness to testify. This hearing regarding the admissibility of testimony amounted to a hearing on a motion to suppress in which the trial judge is the sole arbiter of the weight and credibility of the testimony presented. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990); *State v. Wood*, 828 S.W.2d 471, 474 (Tex.App.—El Paso 1992, no pet.). Since the record factually supports the decision of the trial judge, this Court is not at liberty to disturb that finding. Consequently, on review, we look only to whether the trial court abused its discretion by improperly applying those facts in evidence to the law. *Wood*, 828 S.W.2d at 474.

 In determining whether a trial court abused its discretion in allowing an undisclosed witness to testify, it is incum-

bent on Appellant to establish that the State's failure to disclose the identity of the witness was in bad faith and further, that he could not have reasonably anticipated the witness would testify. *See Stoker v. State*, 788 S.W.2d 1, 15 (Tex.Crim.App. 1989), *cert. denied*, 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990). In the instant case, we need not address the merit of Appellant's point because he failed to request a continuance on grounds of surprise. Failure to seek a continuance or postponement of the trial when the State allegedly failed to fully effectuate discovery causing surprise waives any error. *Lindley v. State*, 635 S.W.2d 541, 544 (Tex. Crim.App.1982).

 Furthermore, introduction of testimony of an undisclosed witness, if error, is rendered harmless upon a trial court, *sua sponte*, permitting an accused to interview the witness or otherwise review the evidence. *See Stoker*, 788 S.W.2d at 15; *Villarreal v. State*, 699 S.W.2d 364, 367 (Tex.App.—San Antonio 1985, no pet.). In the instant case, once Appellant's objection was overruled, the trial court required the State to provide him with a printout of the witness's complete criminal history. Additionally, the prosecutor summarized, in open court, the proposed testimony of the witness. Subsequently, the trial court recessed the proceedings in order to permit Appellant, through counsel, to review the witness's criminal history. Thus, error if any was rendered harmless. Point of Error No. Five is overruled.

Appellant's sixth point of error challenges the admission of evidence of a burglary of a motor vehicle which allegedly constituted an inadmissible extraneous offense. We disagree. Initially, we note Appellant has wholly failed to preserve the error, if any, because he did not object at the earliest opportunity each time the contested evidence was offered.[6] *Hernandez v. State*, 825 S.W.2d 765, 769 (Tex.App.—El

---

6. The record in the instant case fails to disclose that the complained-of testimony was the subject of a motion to suppress. While Appellant did obtain a running objection regarding the testimony when he testified, the earlier intro-

duction of the same substantive testimony from a different source served as a procedural default waiving any error. *See Hernandez v. State*, 825 S.W.2d 765, 769 (Tex.App.—El Paso 1992, no pet.). *See also Stoker*, 788 S.W.2d at 12.

Paso 1992, no pet.), *citing Johnson v. State*, 803 S.W.2d 272, 291 (Tex.Crim.App. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991) *overruled to the extent in conflict with Hietman v. State*, 815 S.W.2d 681, 682, 690 (Tex.Crim. App.1991). Nevertheless, we will briefly address the merits of Appellant's point of error.

 The evidence complained of was introduced through the testimony of three witnesses each of whom related facts surrounding Appellant's alleged commission of burglary of a motor vehicle outside the Sandy's Lounge, the bar he had just left. This testimony set in motion the foundation of facts which initiated the law enforcement officers' attention toward Appellant. This collective testimony provided the triers of fact the context for the closely interwoven facts which transpired almost immediately thereafter giving rise to the instant prosecution. *Johnson v. State*, 784 S.W.2d 75, 77 (Tex.App.—Dallas 1989, pet. ref'd), *citing Mitchell v. State*, 650 S.W.2d 801, 811 (Tex.Crim.App.1983), *cert. denied*, 464 U.S. 1073, 104 S.Ct. 985, 79 L.Ed.2d 221 (1984). *See also Ramos v. State*, 831 S.W.2d 10, 17 (Tex.App.—El Paso 1992, pet. ref'd). It is well settled that where one offense or transaction is one continuous episode, or another offense or transaction is part of the case on trial, or blended or closely interwoven therewith, proof of all the facts is proper. *Maynard v. State*, 685 S.W.2d 60, 66 (Tex.Crim.App.1985), citing *Mitchell v. State*, 650 S.W.2d 801 (Tex. Crim.App.1983). Under these circumstances, the prejudicial nature of admission of the extraneous offense will rarely render it inadmissible so long as it truly sets the stage for the jury's comprehension of the whole criminal transaction. *Maddox v. State*, 682 S.W.2d 563 (Tex.Crim.App.1985). Therefore, we find that the evidence of the events leading up to the shooting of Officer Pasqua and Deputy Stockburger was admissible as part of the *res gestae* which set the whole course and conduct of the instant offense into action. *Rogers v. State*, 774 S.W.2d 247, 257 (Tex.Crim.App.), *cert. denied*, 493 U.S. 984, 110 S.Ct. 519, 107 L.Ed.2d 520 (1989), *aff'd on denial of writ of habeas corpus* at 819 S.W.2d 533 (Tex. Crim.App.1991). For these reasons, we overrule Point of Error No. Six.

In Point of Error No. Seven, Appellant contends the trial court erred in admitting several knives found on the front seat of Appellant's vehicle. Appellant objected to the admission of the knives as being irrelevant. Appellant's objection on those grounds was overruled and the knives admitted. Additionally, Appellant objected to the admission of several of the knives as being tantamount to the admission of an extraneous offense of possession of illegal knives. *See* Tex.Penal Code Ann. §§ 46.01 and 46.02 (Vernon 1989). Appellant's second objection was likewise overruled by the trial court.

Appellant cites *Maynard v. State*, 685 S.W.2d 60 (Tex.Crim.App.1985), in which the Court of Criminal Appeals found error in admission of a switchblade knife found in the accused's vehicle. We find the facts in *Maynard* to be readily distinguishable and not controlling of the instant case.

In *Maynard*, the defendant was accused and convicted for the offenses of burglary committed by entering a habitation with the intent to commit rape. When law enforcement officers responded to the victim's call for help, the defendant hid in some bushes, then bolted and ran and escaped, leaving his vehicle parked near his victim's driveway. A records check confirmed the defendant's ownership of the vehicle, which when inventoried, revealed the presence of a "baggie" of marijuana and a switchblade knife. The *Maynard* court, in reversing the conviction, held that the items were not shown to have been directly connected with, and contemporaneous to, and inseparable from the arrest of the appellant. Unlike the defendant in *Maynard* who escaped the scene of his crime on foot leaving his vehicle parked nearby, Appellant in the instant case was apprehended as he attempted to flee the scene in his vehicle in which the knives were found.

 As a general rule, the State is entitled to admit evidence of the circum-

stances surrounding an accused's arrest. *Maddox v. State*, 682 S.W.2d 563, 564–65 (Tex.Crim.App.1985). Even though Appellant's weapon of choice was a handgun, the physical evidence found about Appellant's person, i.e., the knives on the front seat of his getaway vehicle, was admissible as evidence of the circumstances surrounding his eventual arrest for the attempted capital murder of the two law enforcement officers. *Morelos v. State*, 772 S.W.2d 497, 506 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd). Neither are we persuaded by Appellant's argument that the prejudicial effect of the admission into evidence of several knives substantially outweighed the probative value of explaining the circumstances surrounding Appellant's arrest, which occurred immediately after his attempted escape from a violent shootout with two police officers. As a result, we find that the trial court did not abuse its discretion in admitting the knives into evidence. *See Maddox*, 682 S.W.2d at 564. Point of Error No. Seven is overruled.

In Point of Error No. Eight, Appellant argues the trial court erred in failing to include a limiting instruction in the charge to the jury given during the punishment phase of the proceedings. Specifically, Appellant contends that the limiting instruction was necessary in order to guide the jury as to the proper use of extraneous offenses in assessing punishment. The record shows that Appellant's timely request to submit such an instruction was denied. While Appellant is correct in arguing that a limiting instruction is, as a general rule, appropriate when such evidence is admitted for a limited purpose, the trial court's denial of the request solely during the punishment phase does not constitute error in all cases. *Compare Henriksen v. State*, 500 S.W.2d 491, 496 (Tex.Crim.App. 1973) *with Rodriguez v. State*, 781 S.W.2d 443, 444–45 (Tex.App.—Fort Worth 1989, pet. ref'd).[7]

In the instant case, the trial court's charge during the guilt/innocence phase included a specific instruction limiting the jury's use of the evidence only to the weight it should give to Appellant's testimony. Additionally, the trial court's charge during the punishment phase contained the following instruction:

> You may, however, in fixing [Appellant's] punishment, consider all the facts shown by the evidence admitted before you in the full trial of the cause and the law as submitted to you in the court's charge(s). [Emphasis added].

Thus, the trial court expressly incorporated the law submitted in its guilt/innocence charge into the charge given during the punishment phase, including the proper limiting instruction regarding the extraneous offenses. In *Henriksen*, the Court of Criminal Appeals declined to find any reversible error on the same facts. 500 S.W.2d at 496. *See also Gillon v. State*, 492 S.W.2d 948, 949 (Tex.Crim.App.1973); *January v. State*, 678 S.W.2d 243, 245 (Tex.App.—Corpus Christi 1984, pet. ref'd). Similarly, we find no reversible error, and Point of Error No Eight is overruled.

In Point of Error No. Nine, Appellant complains of the admission of testimony by his Florida probation officer received during the punishment phase. The witness testified regarding Appellant's past criminal history illustrating a litany of felony convictions.[8] On cross-examination, Appellant sought to establish his compliance with the conditions of his Florida probation, including his passing of all the drug tests to which he was required to submit. On redirect, the prosecutor asked the witness to opine, based upon her personal knowledge of Appellant, whether or not Appellant possessed "any rehabilitative qualities." The trial court overruled Appellant's objection that the answer invaded the province of the jury. According to the witness, Appellant's continuous violations of Florida law

---

**7.** Appellant's reliance upon *Rodriguez*, 781 S.W.2d at 445 is questionable in that the opinion cites *Porter v. State*, 709 S.W.2d 213, 215 (Tex. Crim.App.1986), which only held a limiting instruction, when appropriate, must be given in the jury charge on guilt/innocence.

**8.** The record reveals that Appellant had been previously convicted of approximately thirty felonies.

coupled with the past ineffective attempts to rehabilitate him indicated there was "no chance of rehabilitating [Appellant]."

In support of his contention that the trial court erred in overruling his objection to the above question, Appellant cites this Court's 1988 opinion in *Parra Gonzales* where we held that the accused's proffer of portions of a private presentencing investigation through his expert was not admissible based upon the then-existing Article 37.07 of the Texas Code of Criminal Procedure. *Parra Gonzales v. State*, 756 S.W.2d 413, 416–17 (Tex.App.—El Paso 1988, pet. ref'd). We noted, "[t]he express limitations of Articles 37.07 and 42.12 Section 4 with regard to such background investigations clearly evidences an intent to exclude such evaluations from the jury." *Id.* at 417.[9] Since the issuance of that opinion, Article 37.07, § 3(a) was amended to authorize the admission of evidence "as to any matter the court deems relevant to sentencing." Tex.Code Crim.Pro.Ann. art. 37.07, § 3(a) (Vernon Supp.1992). Consequently, our prior opinion is no longer controlling. To the extent that *Parra Gonzales* contravenes Article 37.07, as amended, it is overruled.

■■■■ The consequence of the amendment to Article 37.07, § 3(a) was to grant the trial court wide latitude in the admission of evidence deemed relevant as long as its admission is otherwise permitted by the rules of evidence. *See generally, Grunsfeld v. State*, 843 S.W.2d 521, 523 (Tex. Crim.App.1992) and *Bennett v. State*, 831 S.W.2d 20 (Tex.App.—El Paso 1992, no pet.) (admissibility of victim impact evidence). The Court of Criminal Appeals long ago held that the objection of "invasion of the province of the jury" was no longer valid. *Hopkins v. State*, 480 S.W.2d 212 (Tex.Crim.App.1972). Appellant's only other objection, made immediately after the

witness answered the question, was that she was not qualified to give such testimony. To the contrary, the background testimony elicited from the witness established both her extensive experience in the criminal justice system as well as her personal involvement in the system's attempt to rehabilitate Appellant, which had proven futile. Use of opinion testimony to prove character was approved of in *Hedicke v. State*, 779 S.W.2d 837, 842 (Tex.Crim.App.), *cert. denied*, 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 836 (1990). Consequently, we conclude the State was permitted to elicit opinion testimony to prove Appellant's character trait of his ability or inability to be rehabilitated, and we overrule Point of Error No. Nine.

■■■ In his last point of error, Appellant asserts the trial court erred in overruling his *Batson*[10] objection to some of the State's peremptory strikes. In *Powers v. Ohio*, 499 U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), the Supreme Court has reaffirmed that an accused is entitled to a trial by a jury whose members were selected on a racially-neutral, nondiscriminatory basis. On appeal from denial of a challenge to a peremptory strike, it is incumbent upon Appellant, if he is to be successful, to provide a record illustrating the trial judge's findings are clearly erroneous. *Hill v. State*, 827 S.W.2d 860, 865 (Tex. Crim.App.), *cert. denied*, —— U.S. ——, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992); *Wyle v. State*, 836 S.W.2d 796, 797 (Tex.App.—El Paso 1992, no pet.); *Diaz v. State*, 823 S.W.2d 702, 704 (Tex.App.—El Paso 1992, no pet.).[11]

In the instant case, Appellant contends the State's peremptory strike of veniremember Dora SanMiguel, an Hispanic female, was racially motivated. In rebuttal of Appellant's *prima facie* case, the State sought to explain that Ms. SanMiguel's

**9.** Tex.Code Crim.Pro.Ann. art. 37.07, § 3(a) (Vernon 1981), in effect at the time this Court decided *Parra Gonzalez*, stated at follows:

(a) Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to the prior criminal record of the defendant, his general reputation and his character. The term prior criminal record

means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged.

**10.** *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

**11.** *See also Cantu v. State*, 842 S.W.2d 667, 689 (Tex.Crim.App.1992)

statement that she did not own a weapon served as the State's basis to believe she might not relate to the facts of the instant case. The prosecutor additionally stated the prospective juror's employment as one who worked with mentally handicapped persons indicated she would be kindhearted and lean toward a very light punishment. After the State asserted its racially-neutral reason for excluding the veniremember, the burden of persuasion rested on Appellant's shoulders to prove by a preponderance of evidence the invalidity of the State's explanation. *See Salazar v. State*, 818 S.W.2d 405, 409 (Tex.Crim.App.1991).

The record in the instant case reveals that defense counsel neither cross-examined the prosecutor nor presented any evidence to rebut the State's allegedly racially-neutral reason for excluding the veniremember. Thus, we find that Appellant failed to meet his burden of persuasion. Most damaging, however, is Appellant's failure to secure a ruling from the trial court on his *Batson* challenge. Tex. R.App.P. 52(a). *See also Cooper v. State*, 791 S.W.2d 80, 83 (Tex.Crim.App.1990) (on rehearing). Not having obtained a ruling, Appellant presents nothing for review in Point of Error No. Ten, and it is overruled.

Having overruled each of Appellant's points of error, the judgment of the trial court is affirmed.