William JONES, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–89–00965–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 24, 1991.

Larry Urquhart, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., J. Harvey Hudson, Robert N. Kepple, Asst. Harris County Dist. Attys., for appellee.

Before O'CONNOR, DUGGAN and MIRABAL, JJ.

## OPINION

O'CONNOR, Justice.

In our order in this case, we found that William Jones, the appellant, established a prima facie case of racial discrimination in jury selection. *Jones v. State,* 795 S.W.2d 32, 34 (Tex.App.—Houston [1st Dist.] 1990) (order). Upon that finding, we remanded the case to the trial court to conduct a hearing to determine if the State exercised its peremptory strikes in a racially biased manner, in violation of *Batson v. Kentucky,* 476 U.S. 79, 96, 106 S.Ct. 1712, 1722, 90 L.Ed.2d 69 (1986). The original trial was conducted by a visiting judge; on remand, the Honorable Ted Poe, judge of the 228th District Court, conducted the *Batson* hearing. The trial court concluded that the State offered valid racially-neutral reasons for its peremptory strikes. We affirm the judgment of the trial court.

In the original trial, appellant was found guilty of delivery of a simulated controlled substance.[1] The jury found two enhancement paragraphs true and assessed punishment of 35–years confinement. We refer the reader to our original order for the facts of the case. *Jones,* 795 S.W.2d at 33.

## 1. Standard of review

■ The Equal Protection Clause of the fourteenth amendment of the United States Constitution forbids a prosecutor from excluding venirepersons from jury service solely because of their race. U.S. CONST.

amend. 14; *Powers v. Ohio,* —— U.S. ——, 111 S.Ct. 1364, 1370, 113 L.Ed.2d 411 (1991); *Batson,* 476 U.S. at 89, 106 S.Ct. at 1719. Our State constitution also prohibits *Batson*-type discrimination in the selection of a jury. TEX. CONST. art. I, § 3a; *Hill v. State,* 775 S.W.2d 754, 755 (Tex.App.—Dallas 1989, pet. ref'd).

■ In reviewing a *Batson* claim, an appellate court must determine if the State exercised its peremptory strikes in a purposefully discriminatory manner. *Keeton v. State,* 749 S.W.2d 861, 870 (Tex.Crim. App.1988). The standard of review for a *Batson* challenge is whether the fact findings of the trial court are clearly erroneous. *Whitsey v. State,* 796 S.W.2d 707, 726 (Tex.Crim.App.1989) (op. on reh'g) (specifically modifying the "supported by the record" standard adopted in *Keeton,* 749 S.W.2d at 870). A trial court's finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Whitsey* at 728.

## 2. The *Batson* facts

Appellant is a black man. The array of potential jurors consisted of 50 persons. Six of the 50 persons on the array of potential jurors were black. After voir dire examination, one of the black venirepersons was struck for cause; the defense concurred in the strike. Venireperson number 45, also black, was so far down on the jury list that she never had a chance to be selected. Thus, four blacks on the array were possible jurors.

After both attorneys had completed voir dire examination and made peremptory challenges, 32 persons had a possibility of serving on the petit jury. This figure assumes there were no double strikes. As noted above, four of these 32 venirepersons were black.

1. TEX.HEALTH & SAFETY CODE ANN. § 482.002 (Vernon Pamph.1991).

### 3. The four blacks struck by peremptory strikes

■ The four black venirepersons were peremptorily struck by the State. Three of these strikes are not challenged by appellant. Because the State's overall conduct in jury selection is relevant in proving discrimination, however, we must review each peremptory strike of a black venireperson and the plausible, racially-neutral explanation offered by the State for each. *Whitsey*, 796 S.W.2d at 727.

Venireperson number 13, a black man, was peremptorily struck by both sides. He expressed mixed emotions about sitting in judgment in a simulated controlled substances case. He also disagreed with the statutory punishment range for delivery of a simulated controlled substance and with the laws concerning the range of punishment for habitual criminals.

Venireperson number 21, a black woman, was peremptorily struck by the State. She testified at the voir dire hearing that her son had been convicted of a drug charge and that she was uncertain if he had been treated fairly. She also stated that she would be biased. Even though appellant does not challenge the State's action in striking venireperson number 21, we note that the State did not strike venireperson 25, a white man. Although he said that he did not think a friend of his was treated fairly by the South Carolina authorities in a drug prosecution, the State was able to elicit a statement from him that his friend's experience would not cause him to be biased in this case. The inclusion of venireperson 25 and exclusion of venireperson 21 is supported by a plausible explanation.

Venireperson number 22, a black man, was peremptorily struck by the State. The prosecutor testified at the *Batson* hearing that venireperson number 22 had placed his own name in the area where the form asks for "husband or wife's name" and that this mistake would lead the prosecutor to strike the potential juror for cause. The prosecutor also testified that venireperson number 22 was peremptorily struck because he said that he could not be fair in a case such as this. During the voir dire, venireperson number 22 stated that he could not be fair in light of the fact that the punishment range could change depending on external circumstances.

### 4. The challenged venireperson

Venireperson number 33, a single black woman, was peremptorily struck by the State. When asked to explain the strike during the *Batson* hearing, the prosecutor noted that venireperson number 33 had placed her own name in the area where the juror information form asked "husband or wife's name." This was the only error on venireperson number 33's juror information form.

During voir dire, the prosecutor questioned the panel by asking indirect or general questions. Each venireperson who responded to the inquiry was then examined directly on the response. The prosecutor's inquiries were focused primarily at the venire's attitudes regarding fairness, bias, relatives, and friends who had been involved in criminal proceedings, and the potential jurors' attitudes toward sentencing and the effect of enhancement.

Venireperson number 33 never responded to any of the prosecutor's inquiries, and was the only black venireperson not to do so. As a result, she was never directly questioned by the State. When briefly questioned by the defense counsel she merely indicated that she could be fair, impartial, and consider the entire range of punishment.

At the *Batson* hearing, the trial court found that:

> Juror number 33, Ms. Smith was black, Mr. Kepple [the prosecutor] exercised a peremptory strike against Ms. Smith. Mr. Kepple exercised this strike because Ms. Smith incorrectly completed her juror information form, that is she placed her own name in the space reserved for the name of her spouse.

Thus, the trial court concluded that the prosecutor's reason for striking the venireperson was sufficient to rebut appellant's prima facie case of racial discrimination in jury selection. We must now determine if that conclusion was clearly erroneous. *Whitsey,* 796 S.W.2d at 721.

5. The State's explanation for the strike

The trial court accepted the State's explanation that it struck venireperson number 33 because she incorrectly completed a single section of her juror information form. Examination of the record reveals that a total of seven venirepersons incorrectly wrote their own names in the space provided on the form for a spouse's name. When questioned at the *Batson* hearing in regard to the State's peremptory strikes of venirepersons for this reason, the prosecutor gave the following testimony, beginning with reference to venireperson 22:

Q. Okay. Do you recall what he did on the juror information sheet that was in error?

A. There is a line near the top where you are to put your spouse's name, and he put his own name in that line.

Q. Were there other people or prospective jurors that also made some sort of error on their information sheet?

A. Yes, there were people who did that, made that same mistake.

Q. And were there people who made those same errors that were non-black people?

A. Yes, there were.

Q. And did you strike those people, also?

A. No. *I would have.* The people that were on the panel that made that same mistake were Number 43, Ms. Patel, and Number 44, Ms. Hardy. *Neither of those people were black.* They originally were in the first thirty-two to be considered, and I marked that down on my original juror information sheet as a problem. But the defense asked for a shuffle, and those two people got moved

out of contention. *So I didn't have to exercise a peremptory on either of those people.*

. . . . .

Q. And then the last peremptory challenge of a black person was Number 33?

A. Yes.

Q. And was there—what was the reason that you struck that person?

A. *I struck her for the same thing that gave me concern about the other people. She made the same error on her information sheet.*

Thus, the State established a racially neutral, albeit subjective, reason for the exclusion of venireperson number 33.

Appellant wants us to balance Ms. Smith's mistake in filling in the form against the other panel members' failure to fill in the blanks. The two are not comparable. First, there are no instructions to fill in every blank. Second, Ms. Smith's mistake was a definite error; we cannot tell from the record that the failure to fill in the blanks by other panel members was a mistake at all. Further, such reasoning would compel the State to inquire of each venireperson the reason for any error or blank left on the completed form. That would constitute an arbitrary invasion of the prosecutor's province, which is to exclude potential jurors on any legitimate basis, whether it is objective or subjective, as long as it is not in defiance of the *Batson* rule.

In *Tompkins v. State,* 774 S.W.2d 195 (Tex.Crim.App.1987), *aff'd,* 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989), the Court of Criminal Appeals examined the latitude allowed a prosecutor in juror exclusion. The court held that potential inability to correctly understand written jury instructions would provide a satisfactory racially neutral basis for juror exclusion. *Id.* at 204–205. That court further examined the prosecutor's wholly subjective reasoning behind exclusion of a black venireperson simply because he was an employee of the United States Postal Service, and de-

tected no error. *Id.* at 205. The *Tompkins* court restated the function of a reviewing court:

> [W]e find that the prosecuting attorney's reasons that she gave constitute a racially neutral explanation, and it is not the office of this Court to judge her credibility. Explicit in *Batson,* supra, is that a prosecuting attorney is free to exercise his peremptory strikes, provided that they are non-race related. "The challenge, after all, is still a peremptory one."

774 S.W.2d at 205.

This Court has addressed the issue of a prosecuting attorney's subjective juror selection process. We held that, when viewed in the totality of the facts and circumstances of each specific case, even a prosecutor's "legitimate hunch" that a particular venireperson's traits would render them unsuitable for jury service was a racially-neutral criterion, and not motivated by racial discrimination. *York v. State,* 764 S.W.2d 328, 331 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd); *see Keeton,* 749 S.W.2d at 865 ("[W]e believe that *Batson* leaves room for the State to exercise its peremptory challenges on the basis of the prosecutor's legitimate 'hunches' and past experience, so long as racial discrimination is not the motive.").

■ In overcoming the State's evidence at a *Batson* hearing, the following types of evidence may be used to show sham or pretext in the State's purportedly race-neutral explanations:

(1) The reasons offered by the prosecutor are not related to the facts of the case;

(2) a lack of questioning of the challenged venireperson, or a lack of meaningful questions;

(3) disparate treatment of the venirepersons—persons with the same or similar characteristics as the challenged venireperson were not struck;

(4) disparate examination of the venirepersons—questions designed to provoke certain responses that are likely to disqualify black venirepersons were put to blacks, but not to whites;

(5) the percentage of peremptories used to strike minority panel members; and

(6) an explanation based on a group bias where the group trait is not shown to apply to the challenged venireperson specifically.

*Keeton,* 749 S.W.2d at 868.

Our review of the testimony offered at the *Batson* hearing reveals no evidence of pretext, with one possible exception. The State used four of its ten peremptory challenges to exclude the four remaining black venirepersons that could be reached for jury service. One was a double strike. The other three were *all* excluded for, among other reasons, the fact that they all incorrectly wrote their own name in the blank space reserved for their spouse's name.

At the *Batson* hearing, the State directly addressed this coincidence with its plausible racially-neutral explanation:

> When someone affirmatively puts their name into an area that's clearly reserved for their spouse, that gives rise to concern to me in that that person may have a difficult time of following the directions and maybe someone you can't rely upon to follow the law or the directions of the Court during the trial. And that's why I'm concerned about that.

> · · · · ·

> [I]n my mind if they can't follow the instructions of the Court, they may have a difficult time indeed following the laws concerning punishment, the laws concerning burden of proof, all the things which ... I want to be able to rely upon when the jurors listen to the evidence and deliberate it.

We find that such reasoning is directly relative to the facts of this case. When this subjective measurement of jurors' ability to follow instructions was applied, it was done with uniformity and without regard to race. The State testified that *any* venireperson who failed to comply with the juror form instructions was to be challenged, and we hold that such a racially-neutral application overcomes the sugges-

tion of pretext in the elimination of the challenged black venireperson. "While it is true that an elusive, intangible explanation for exclusion might not qualify as racially neutral, such is not the case when the explanation is coupled with an objectively verifiable reason." *Keeton,* 749 S.W.2d at 869.

We conclude that, with respect to venireperson number 33, a rational trier of fact might have failed to find, by a preponderance of the evidence presented by the defense, any intentional discrimination on the part of the prosecuting attorney in this case.

The judgment of the trial court is affirmed.