Joseph Willie IRVINE, Appellant,

v.

The STATE of Texas, Appellee.

No. 01-92-00612-CR.

Court of Appeals of Texas,
Houston (1st Dist.).

June 10, 1993.

Roland B. Moore, III, Houston, for appellant.

John B. Holmes, Dist. Atty., Alan Curry, Asst., Houston, for appellee.

Before OLIVER–PARROTT, C.J., and HEDGES and DUNN, JJ.

## OPINION

HEDGES, Justice.

A jury convicted appellant, Joseph Willie Irvine, for possession of a controlled substance. Finding the allegations in two enhancement paragraphs to be true, the jury assessed his punishment at 25–years confinement. We affirm.

Officers Wilburn and Cooper arrested appellant for public intoxication after observing him staggering in the street toward an apartment complex for which they were working security. Their search of his person produced a number of small baggies that contained what appeared to be crack cocaine. Subsequent tests confirmed the nature of the substance. In seven points of error, appellant attacks the judgment of the trial court on various grounds. .

In point of error three, appellant argues that the evidence was insufficient to convict him for possession of a controlled substance because the amount of cocaine "was invisible to the naked eye." He contends that given the minute amount of cocaine, the State did not prove that he knowingly possessed a controlled substance. We disagree with appellant's characterization of the evidence.

Appellant asserts that "Charles Moore of the Harris County Medical Examiner's Unit stated that the amount of substance was invisible to the naked eye." Mr. Moore actually testified as follows:

Q. Okay. Now you examined 11 baggies, correct?

A. Correct.

Q. Assuming there were equal amounts in each baggie, since you didn't test them individually, how many—divide 2.69 by 11, and what do we have there?

. . . .

A. Approximately .24 milligrams per baggie.

Q. Is that correct, .24 milligrams? So, .24 times 11 equals 2.69 milligrams that you got?

A. Correct.

. . . .

Q. Would you agree that .24 is not something you could see with your eye?

A. .24 milligrams of cocaine, probably not. I can't say a hundred percent, but probably not.[1]

The possession of even a minute amount of a controlled substance is sufficient to sustain a conviction if the amount can be seen and measured. *Sims v. State*, 833 S.W.2d 281, 284 (Tex.App.—Houston [14th Dist.] 1992, no pet.); *see Jarrett v. State*, 818 S.W.2d 847, 848 (Tex.App.—Houston [1st Dist.] 1991, no pet.). The evidence indicates that the cocaine in this case could be seen and measured.

It is apparent that Mr. Moore was responding to a hypothetical assumption that the cocaine was divided equally among the 11 baggies seized. Appellant's counsel prefaced his questions with, *"Assuming there were equal amounts in each baggie ..."* There is no evidence in the record that the cocaine was, in fact, divided into exactly equal amounts between the 11 baggies, or that none of the baggies contained enough cocaine to be seen with the naked eye. Mr. Moore stated that he "clearly saw a white substance in those bags when they were received[.]" Additionally, one officer testified that he saw "white particles" in the baggies, and another testified that he saw "white powder residue in each baggie."

The cocaine found in appellant's possession was not "invisible to the naked eye." There was evidence that the controlled substance could be seen and measured. We overrule point of error three.

In point of error one, appellant contends that the trial court erred by denying his motion for new trial, which was based on alleged jury misconduct. He argues that

---

**1.** We note that Mr. Moore did not state that .24 milligrams of cocaine was invisible to the naked eye; rather, he testified that he *"probably"* could not see it.

the jury's alleged discussion of his failure to testify at trial constitutes jury misconduct.

The trial court decides issues of fact raised in a motion for new trial based on alleged jury misconduct. *Carrillo v. State*, 566 S.W.2d 902, 913 (Tex.Crim.App. [Panel Op.] 1978). The trial court is free to believe one or some of the jurors' testimony and disbelieve that of other jurors. *Thomas v. State*, 699 S.W.2d 845, 854 (Tex. Crim.App.1985). "Where there is conflicting evidence on an issue of fact as to jury misconduct, the trial judge determines the issue and there is no abuse of discretion in overruling the motion for new trial." *Id.* at 854; *see Carrillo*, 566 S.W.2d at 913.

Appellant filed two motions for new trial based on jury misconduct. At a hearing on appellant's motion, the trial court heard the testimony of four jurors. The jury foreman testified as follows:

Q. I want to ask you about the deliberations that took place amongst the jury of which you were a foreman. Was there a discussion during the jury's deliberations of the fact that Mr. Irvine did not testify?

A. Yes, sir.

. . . .

Q. And that fact was discussed amongst the jury?

A. Yes, sir.

Q. How much time was devoted to that discussion?

A. About 25, 30 minutes.

Q. And how long after that did the jurors vote to convict Mr. Irvine?

A. I'd say about another 20, 25 minutes.

. . . .

Q. Is it true the fact that he did not testify made you vote to convict Mr. Irvine?

A. Yes, sir—

. . . .

Q. Did that discussion cause you to change your vote from not guilty to guilty?

A. Yes, sir. What it was, we didn't deny that he was caught with the evidence.

. . . .

Q. After the discussion about the defendant not testifying, you decided to convict him rather than to acquit him; is that correct?

A. Yes, sir, *according to the evidence.*

Q. Do you know from the—if anyone else changed their vote because of that discussion?

A. Yes, sir.

Q. Do you know which other juror changed their vote?

A. I'm not at liberty to say, sir.

Q. But you are sure there was at least one and possibly more jurors that changed their vote?

A. Possibly.

(Emphasis added.)

Two jurors who also testified at the hearing contradicted the foreman's testimony regarding a 25 to 30–minute discussion of the matter:

(1)

Q. Sir, do you remember any comments being made during the juror deliberations regarding the defendant's failure to take the witness stand in his own behalf?

A. Well, I just remember that it was—everybody kind of wondered. I guess everybody was wondering why, and it was brought up once and immediately put aside because we all realized that we were told that we weren't supposed to consider that.

Q. So, you are saying that the matter was brought up once; and when it was brought up, other jurors admonished whoever brought it up that it was not to be discussed, and there was no further discussion of it?

A. Yes. That's the way I understood it.

Q. There was no 25 to 30 minute discussion of the fact that he didn't take the witness stand?

A. No, sir.

(2)

Q. And as a member of that jury, do you recall whether any statements were ever made in the jury room regarding the fact that Mr. Irvine did not take the witness stand and testify?

A.  Yes, I do recall that being brought up.

Q.  In what context were those statements made?

A.  It was brought up, but, then, someone else immediately said, "We cannot take that into consideration."

Q.  So, was there ever any prolonged discussion of the fact that Mr. Irvine did not take the witness stand?

A.  No, sir.

Q.  Do you recall how many times it was brought up, this fact that he didn't take the stand?

A.  I think it may have been brought up more than once, but every time it was, immediately, we can't think about that. It's not part of what we can consider.

Q.  All right.  So, it never played—it was never discussed for any prolonged period of time?

A.  No, sir.

Q.  And it was appropriately squelched whenever it was brought up by other jurors?

A.  Yes, sir.

There was also testimony from jurors that there was *no* discussion of appellant's not testifying:

(1)

Q.  Was there some discussion about whether or not he testified?

A.  No.  We didn't discuss it.

Q.  Did it come up once?

A.  Once, but we didn't discuss it.

(2)

Q.  [W]as there some discussion?

A.  It was brought up and immediately someone said, "We cannot discuss that."

Q.  Was there any interplay between the person that brought it up and anyone else in the jury?

A.  Not that I recall.

Q.  Some?

A.  Not that I recall.

■ The failure of a defendant to testify in his own criminal proceeding should not be held against him by the jury.  *See Kopanski v. State,* 713 S.W.2d 188, 191 (Tex.App.—Corpus Christi 1986, no pet.).  But mere references by jurors to the fact that the defendant did not testify do not amount to reversible error.  *Powell v. State,* 502 S.W.2d 705, 711 (Tex.Crim.App. 1974); *see Kopanski,* 713 S.W.2d at 191.  To constitute reversible error, the references "must amount to a discussion by the jurors or be used as a circumstance against the accused."  *Powell,* 502 S.W.2d at 711; *Kopanski,* 713 S.W.2d at 191.

■ The trial court evidently believed the jurors who stated that appellant's failure to testify was not discussed and disbelieved the juror who said it was.  This determination was within the court's discretion.  *Thomas,* 699 S.W.2d at 854; *Carrillo,* 566 S.W.2d at 913.

The record also supports the conclusion that appellant's failure to testify was not "used as a circumstance against" him. The trial court heard testimony that whenever the matter was brought up, other jurors would admonish the juror who raised it that the jury was not to consider it.

The trial court did not abuse its discretion in denying appellant's motions for new trial.  We overrule point of error one.

In point of error two, appellant contends that the trial court erred in denying his motion to suppress evidence.  He argues that because his warrantless arrest was without probable cause and therefore unlawful, the State cannot justify the seizure of the cocaine as incident to a lawful arrest.  We disagree that appellant's arrest was unlawful.

■ Appellant was arrested for public intoxication.  An individual commits the offense of public intoxication if he or she "appears in a public place under the influence of alcohol or any other substance, to the degree that the individual may endanger himself or another."  TEX.PENAL CODE ANN. § 42.08(a) (Vernon 1989).  An officer may make a warrantless arrest when he has probable cause to believe that an offense is being committed within his presence or view.  *Gallagher v. State,* 778 S.W.2d 153, 154 (Tex.App.—Houston [1st Dist.] 1989, no pet.) (officer "possessed sufficient probable cause to arrest appellant" for public intoxication where he personally

observed appellant "visibly intoxicated" in a public place and posing a danger to himself and others); *see* TEX.CODE CRIM.P.ANN. art. 14.01 (Vernon 1977).

■ One of the officers who encountered appellant on the night of his arrest testified that appellant was "staggering in the street very uncoordinated and this street was heavy traffic." Appellant entered the front gate of an apartment complex "staggering and disoriented." Appellant was "intoxicated to that degree at the point and place where he was at, he could have been a danger to himself or others[.]"

The State established all the elements of public intoxication. The officers testified that they observed appellant on a city street, thereby meeting the requirement of a public place. The officers testified that he appeared intoxicated. The testimony that appellant was staggering down a busy city street at night provides the element of "danger to himself." The officers had probable cause to arrest appellant for the offense of public intoxication.

The seizure of the cocaine was incident to a lawful arrest. We overrule point of error two.

In point of error four, appellant argues that his conviction should be reversed because the State did not establish a proper chain of custody over the contraband. Appellant notes certain "incomplet[ions]" in the testimony of the State's witnesses concerning the chain of custody. For example, appellant points out that neither of the officers was certain how many baggies were seized at the time of appellant's arrest. He further notes that one officer did not know who submitted the baggies as evidence. Appellant asserts that based on these facts, "[t]he possibility exists that the original baggies were supplemented by other baggies."

■ There is no evidence in the record to support this contention. We know of no requirement that all of the body of the State's evidence must be totally consistent. *See Elkins v. State*, 822 S.W.2d 780, 783 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd); *Smith v. State*, 789 S.W.2d 419, 420

(Tex.App.—Houston [1st Dist.] 1990, pet. ref'd). In fact, testimony with minor inconsistencies is often more credible than identical recitations that may appear rote-like and rehearsed.

■ Where physical evidence is properly identified, care and custody issues go to the weight to be given the evidence, not to its admissibility. *Blackmon v. State*, 830 S.W.2d 711, 713 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd); *see Gallegos v. State*, 776 S.W.2d 312, 315 (Tex.App.—Houston [1st Dist.] 1989, no pet.) Only upon a showing that the substance was tampered with or changed will a care and custody question affect admissibility. *Blackmon*, 830 S.W.2d at 713; *see Gallegos*, 776 S.W.2d at 315. There is no evidence in this record that the cocaine was "tampered with or changed." Therefore, the care and custody discrepancies were properly considered by the trial court as matters influencing the weight of the evidence, not governing its admissibility.

The trial court did not abuse its discretion in overruling appellant's objections to the admission of the cocaine based on an incomplete and uncertain chain of custody. We overrule point of error four.

In point of error five, appellant contends that the trial court erred when it denied appellant's motion to strike a juror for cause. We hold that appellant did not preserve error on this point.

■ In *Jacobs v. State*, 787 S.W.2d 397 (Tex.Crim.App.1990), the Court of Criminal Appeals set out the requirements for preserving error on a trial court's allegedly erroneous denial of a challenge for cause:

(1) the voir dire "of the individual venireperson" must be recorded and transcribed;

(2) the appellant must assert "a clear and specific challenge for cause clearly articulating the grounds therefor;"

(3) after the challenge for cause is denied by the trial court, appellant must use a peremptory strike on that juror;

(4) all peremptory challenges must be exhausted;

(5) when all peremptory challenges are spent, appellant must request additional peremptory challenges; and

(6) the appellant must assert that an objectionable juror sat on the case.

*Id.* at 405.

Appellant contends that he should have been allowed to strike juror number two for cause. But appellant's counsel failed to assert "a clear and specific challenge for cause" regarding juror number two, "clearly articulating the grounds therefor." Rather, after appellant's counsel, the prosecutor, and the court finished questioning juror number two, appellant's counsel merely stated, "Your honor, the defense makes a motion to strike." This articulation does not meet the second *Jacobs* requirement. Appellant therefore failed to preserve error on this point.

We overrule point of error five.

In point of error six, appellant argues that the trial court erred when it refused to dismiss the jury panel resulting from "the State's racially motivated jury strikes." Appellant contends that the prosecutor struck prospective jurors number 16, 18, and 25 because of their race. These prospective jurors, like appellant, are black.

*Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), stands for the proposition that the United States Constitution forbids a prosecutor from excluding potential jurors solely because of their race. *Jones v. State,* 818 S.W.2d 532, 533 (Tex.App.—Houston [1st Dist.] 1991, no pet.). In reviewing a *Batson* challenge, we must determine whether "the State exercised its peremptory strikes in a purposefully discriminatory manner." *Id.* We must use a "clearly erroneous" standard of review to determine error in the trial court's ruling. *Id.* "A trial court's finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Id.*

The prosecutor stated at the *Batson* hearing that he struck prospective juror number 16 because she "was sleeping during the voir dire. She also said she could not reach a verdict in her last criminal jury trial that she served in." Inattentiveness during voir dire is a racially neutral reason for striking a prospective juror. *See Solomon v. State,* 830 S.W.2d 636, 637 (Tex.App.—Texarkana 1992, pet. ref'd). Inability to reach a verdict in a previous criminal trial is another racially neutral motivation. *Levy v. State,* 749 S.W.2d 176, 178 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd). It is undisputed that the prosecutor struck a white prospective juror for this same reason.

The prosecutor struck prospective juror number 18, in part, because she stated that "she couldn't follow the full range of punishment in the case." He struck prospective juror number 25, in part, because he also said that he "couldn't follow the full range of punishment." This reason is racially neutral.

We conclude that the trial court's finding on appellant's *Batson* challenge was not clearly erroneous. We overrule point of error six.

In point of error seven, appellant contends that the trial court erred in allowing the State to call a witness who was not named in the State's list of witnesses. Appellant argues that the State's failure to disclose its fingerprint expert entitles him to a new trial on punishment. It is clear that the prosecutor, in contravention of a pretrial agreed order, did not provide appellant with the name of the State's fingerprint examiner who compared appellant's fingerprints with the fingerprints in the penitentiary packets. This evidence was used to support the allegations in the enhancement paragraphs of the indictment.

In *Stoker v. State,* 788 S.W.2d 1 (Tex. Crim.App.1989), the Court of Criminal Appeals set out the law that controls our disposition of this point of error:

If a witness whose name is not on a witness list furnished the defendant is permitted to testify, the standard of review is whether the trial court abused its discretion in allowing such witness to testify. Among the factors which will be

considered by this Court in determining whether there has been an abuse of discretion is a showing of bad faith on the part of the prosecutor in failing to disclose ahead of time the name of the witness. Another such factor is whether the defendant can reasonably anticipate that the witness would testify, although his or her name was not included within the witness list.

*Id.* at 15 (citations omitted).

We hold that the trial court did not abuse its discretion in allowing the fingerprint examiner to testify. First, there is no evidence in the record of bad faith on the part of the prosecutor. Second, the allegations in the two enhancement paragraphs were clearly set out in the indictment. Appellant's counsel should have anticipated that, should the possibility of a loss at the innocence-guilt phase of trial be realized, a fingerprint examiner would testify for the State to compare appellant's fingerprints with the fingerprints in the penitentiary packets. This identification was necessary to support the allegations made in the enhancement paragraphs.

The trial court did not abuse its discretion in allowing the testimony of the State's fingerprint examiner. We overrule point of error seven.

We affirm the judgment of the trial court.