NUMBER 13-01-637-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG
___________________________________________________________________

STEVEN RICHARD HORNER,                                              Appellant,

v.

THE STATE OF TEXAS,                                                      Appellee.
___________________________________________________________________

On appeal from the 36th District Court
of San Patricio County, Texas.
__________________________________________________________________

OPINION ON MOTION FOR REHEARING

Before Chief Justice Valdez and Justices Rodriguez and Castillo
Opinion by Justice Rodriguez

         Appellant, Steven Richard Horner, filed a motion for rehearing arguing that this
Court made an error in the disposition of his fourth issue. Upon our review of the
record, we grant appellant's motion for rehearing, withdraw our prior memorandum
opinion and judgment of August 14, 2003, and substitute the following as the opinion
of the Court.
         Appellant brings this appeal following his conviction for the felony offense of
aggravated sexual assault. The trial court has certified that this case "is not a plea-bargain case, and the defendant has the right of appeal." See Tex. R. App. P.
25.2(a)(2). Appellant contends the trial court erred by: (1) denying his motion for
change of venue; (2) denying his motion to suppress evidence from State witness
James Ronald Jones II; and (3) overruling his objection to the testimony of Carmela
Quintanilla regarding the victim’s out-of-court statement. Appellant also complains of
ineffective assistance of counsel. We affirm.
I. BACKGROUND
         Appellant was indicted for the first degree felony offense of aggravated sexual
assault. The case was dismissed because of the death of the victim, her sister, and
her mother. Appellant was later re-indicted for the same offense. The indictment
alleged appellant caused the female sexual organ of C.S., a child younger than fourteen
years of age, to contact the sexual organ of appellant. After a two-day trial, the jury
found appellant guilty. It assessed punishment at ninety-nine years in the Institutional
Division of the Texas Department of Criminal Justice and imposed a $10,000.00 fine.
II. MOTION FOR CHANGE OF VENUE
         By his first issue, appellant contends the trial court erred by denying his motion
for change of venue. This Court reviews motions for change of venue under an abuse
of discretion standard. Dewberry v. State, 4 S.W.3d 735, 744 (Tex. Crim. App.
1999). The Texas Code of Criminal Procedure provides that a trial court may change
venue upon a showing: (1) that there exists so great a prejudice against the defendant
in the county where the prosecution is commenced that he cannot obtain a fair and
impartial trial; or (2) that there is a dangerous combination against the defendant
instigated by influential persons, by reason of which the defendant cannot expect a
fair trial. Tex. Code Crim. Proc. Ann. art. 31.03(a)(1) & (2) (Vernon 1989). A motion
made under either ground must be in writing and supported by three affidavits, one
from the defendant and two from credible witnesses. See id. art. 31.03(a).
         At the pretrial hearing, appellant provided the court with his motion for change
of venue. However, the motion did not include affidavits from two witnesses. See
id. The omission of these affidavits renders the motion fatally defective. Brooks v.
State, 418 S.W.2d 835, 836 (Tex. Crim. App. 1967). There is no abuse of discretion
when the trial court denies a motion that does not adhere to statutory requirements. 
See Christopher v. State, 489 S.W.2d 573, 574 (Tex. Crim. App. 1973); Stuart v.
State, 456 S.W.2d 129, 131 (Tex. Crim. App. 1970); Hinkle v. State, 442 S.W.2d
728, 733 (Tex. Crim. App. 1969).
         Thus, we conclude the trial court did not abuse its discretion in denying the
motion for change of venue. See Dewberry, 4 S.W.3d at 744. Appellant’s first issue
is overruled.
III. MOTION TO SUPPRESS 
         By his second issue, appellant contends the trial court erred by denying his
motion to suppress evidence provided by State’s witness James Ronald Jones II. In
his motion, appellant contended the State delayed disclosing Jones as a witness and
the delay did not allow him sufficient time to properly prepare voir dire argument and
cross examination. On March 5, 2001, appellant filed a motion entitled “Motion for
Disclosure of Witness Names." The order granting the motion directed the State to
provide such names no later than 5:00 p.m. on March 16, 2001. Jones was not
disclosed as a witness until July 5, 2001. The State claims that the witness was not
known until May. The State further asserts that his identity was not disclosed until
July 5 because the witness was assisting the State with another investigation
regarding appellant. 
         Upon request by the defense, notice of the State’s witnesses should be given. 
Stoker v. State, 788 S.W.2d 1, 15 (Tex. Crim. App. 1989) (citing Young v. State, 547
S.W.2d 23, 27 (Tex. Crim. App. 1977)). If the trial court allows an undisclosed
witness to testify, we review the decision for abuse of discretion. Castaneda v. State,
28 S.W.3d 216, 223 (Tex. App.–El Paso 2000, pet. ref’d) (citing Stoker, 788 S.W.2d
at 15); Irvine v. State, 857 S.W.2d 920, 926 (Tex. App.–Houston [1st Dist.] 1993,
pet. ref’d). In determining whether the trial court abused its discretion, this Court
should consider whether: (1) the prosecutor acted in bad faith in failing to provide the
defense with the name of the witness; and (2) the defendant could reasonably
anticipate that the witness would testify despite the State’s failure to disclose the
witness’s name. See Stoker, 788 S.W.2d at 15; Castaneda, 28 S.W.3d at 223;
Irvine, 857 S.W.3d at 927. In determining whether the State acted in bad faith in
failing to provide the name of the witness, we consider whether the State intended to
deceive, whether the State’s notice left adequate time to prepare, and whether the
State freely provided the defense with information. See Hardin v. State, 20 S.W.3d
84, 88 (Tex. App.–Texarkana 2000, pet. ref’d); see also Stoker, 788 S.W.2d at 15. 
         Here, although the State waited some time after discovering the witness to
disclose his name to appellant, it does not appear to have been done with the intent
to deceive. See Hardin, 20 S.W.3d at 88. The State delayed disclosure to protect
another investigation and to allow for the witness to be transported to another facility. 
See id. Also, although the State did not disclose the identity of the witness until July
5, 2001, the trial did not begin until August 13, 2001. Thus, appellant had adequate
time to prepare. See id. Furthermore, the State was willing to provide appellant with
information that could be used to impeach the witness and with the terms of the
State’s agreement with the witness. See id. We find no showing of bad faith by the
State.
         We next consider whether the defendant could reasonably anticipate that the
witness would testify for the State. Stoker, 788 S.W.2d at 15. The record shows 
Jones was assisting the State with another investigation regarding Horner. Appellant
and Jones were inmates at the same correctional facility. They had no prior
relationship and did not maintain a relationship after their incarceration. Furthermore,
the record supports that the investigation was confidential and covert, thus, the
defendant could not have reasonably anticipated that the witness would be called to
testify. However, the record does not show there was a significant degree of
disadvantage inherent in the surprise, if any, resulting from the State’s late disclosure. 
See id. Counsel was informed on July 5, 2001 of the State’s intent to call Jones and
was given the scope of his testimony prior to trial. The trial court remedied any
surprise to appellant by granting a continuance. See id. Voir dire began August 13,
2001, over a month after appellant was provided with the witness’s identification. 
          Thus, we find the trial court did not abuse its discretion in refusing to suppress
the witness’s testimony. Appellant’s second issue is overruled.
IV. INEFFECTIVE ASSISTANCE OF COUNSEL
         By his third issue, appellant contends he was not afforded effective assistance
of counsel. The United States Supreme Court and the Texas Court of Criminal Appeals
have promulgated a two-prong test to determine whether representation was so
inadequate that it violated a defendant’s sixth amendment right to counsel. See, e.g.,
Strickland v. Washington, 466 U.S. 668, 687 (1984); Hernandez v. State, 726
S.W.2d 53, 54-55 (Tex. Crim. App. 1986); Munoz v. State, 24 S.W.3d 427, 433
(Tex. App.–Corpus Christi 2000, no pet). To establish ineffective assistance of
counsel, appellant must show: (1) his attorney’s representation fell below an objective
standard of reasonableness; and (2) there is a reasonable probability that, but for his
attorney’s errors, the result of the proceeding would have been different. Strickland,
466 U.S. at 687; Stone v. State, 17 S.W.3d 348, 349-50 (Tex. App.–Corpus Christi
2000, pet. ref’d). Appellant has the burden of proving ineffective assistance of
counsel by a preponderance of the evidence. See Munoz, 24 S.W.3d at 434; Stone,
17 S.W.3d at 350. An allegation of ineffective assistance of counsel will be sustained
only if it is firmly founded and the record affirmatively demonstrates counsel’s alleged
ineffectiveness. Guzman v. State, 923 S.W.2d 792, 797 (Tex. App.–Corpus Christi
1996, no pet.). In assessing a claim of ineffective assistance of counsel, there is a
strong presumption that counsel’s conduct fell within the wide range of reasonable
professional assistance. Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App.
2001). Also, in the absence of evidence of counsel’s reasons for the challenged
conduct, an appellate court will assume a strategic motivation and will not conclude 
the conduct was deficient unless the conduct was so outrageous that no competent
attorney would have engaged in it. See id.; Thompson v. State, 9 S.W.3d 808, 814
(Tex. Crim. App. 1999). Finally, an appellant’s failure to satisfy one prong of the
Strickland test negates a court’s need to consider the other prong. Garcia, 57 S.W.3d
at 440.
         Appellant contends his trial counsel was ineffective in: (1) failing to properly
object to responses of venire members; (2) failing to file a statutorily sufficient motion
for change of venue; and (3) failing to preserve evidence of prejudicial print and media
coverage for the motion for change of venue.
         Appellant urges that his trial counsel’s failure to object to responses of venire
members resulted in the voir dire process being tainted. The record shows that trial
counsel did not object to responses made by the venire members. However, he did
use his challenges to ensure all commenting venire members were eventually stricken
for cause. In the absence of evidence showing counsel’s reasons for the challenged
conduct, we assume a strategic motivation and will not conclude that the conduct was
deficient. See Garcia, 57 S.W.3d at 440. Furthermore, appellant has not proven by
a preponderance of the evidence that the responses tainted the voir dire process.
Munoz, 24 S.W.3d at 434. 
         Appellant next challenges trial counsel’s action regarding his motion for change
of venue. Specifically, appellant complains trial counsel was ineffective because he
failed to attach the affidavits of two witnesses to his motion for change of venue as
required by article 31.03(a) of the code of criminal procedure. Tex. Code Crim. Proc.
Ann. art. 31.03(a)(Vernon 1989). Appellant correctly asserts the motion was
defective and failed to comply with the statutory requirements. However, appellant
provides no evidence that his trial counsel would have been able to obtain two credible
individuals willing to sign affidavits on his behalf or that the affidavits would have
provided information sufficient to warrant a change of venue. Therefore, appellant did
not prove by a preponderance of the evidence that the trial court would have granted
the motion for the change of venue if the affidavits had been properly filed. See
Strickland, 466 U.S. at 687; Munoz, 24 S.W.3d at 434. 
         Finally, appellant claims trial counsel was ineffective because he failed to
preserve evidence of prejudicial print and media broadcast coverage. However,
appellant has not presented evidence of the alleged extensive prejudicial print and
media broadcast coverage. See Munoz, 24 S.W.3d at 434. To the contrary, the
record reveals only one newspaper article, and it was written over a year before jury
selection. In the absence of evidence showing counsel’s reasons for the challenged
conduct, we will assume a strategic motivation and will not conclude the conduct was
deficient. See Garcia, 57 S.W.3d at 440. Thus, the record fails to affirmatively
demonstrate counsel’s alleged ineffectiveness. See Guzman, 923 S.W.2d at 797.
         We conclude appellant was not denied effective assistance of counsel. 
Appellant’s third issue is overruled.
V. OUT-OF-COURT STATEMENT
         By his fourth issue, appellant argues that the out-of-court statement of C.S., the
victim, does not fall within the medical diagnosis or treatment exception to the hearsay
rule. See Tex. R. Evid. 803(4). Appellant further contends the admission of the
statement violated his confrontation rights. See U.S. Const. amends. VI & XIV; Tex.
Const. art. I, § 10.
A. Standard of Review
         This Court reviews the trial court’s decision to admit or exclude evidence under
the abuse-of-discretion standard. See Green v. State, 934 S.W.2d 92, 101-02 (Tex.
Crim. App. 1996). We will not reverse a trial court if its ruling is within the “zone of
reasonable disagreement.” Id. at 102.
B. Medical Diagnosis/Treatment Hearsay Exception
         During the course of the trial, appellant’s attorney requested a hearing outside
the presence of the jury to consider the admissibility of hearsay testimony to be
offered by the State’s witness, Carmela Quintanilla, a social worker at Driscoll
Hospital.


 Appellant objected that Quintanilla’s testimony regarding C.S.’s out-of-court
statement did not fall within the medical diagnosis or treatment exception to the
hearsay rule. See Tex. R. Evid. 803(4). The court overruled appellant’s objection. By
receiving an adverse ruling on his objection made outside the presence of the jury,
appellant preserved any error the trial court may have committed in allowing
Quintanilla to testify regarding C.S.'s statements on the basis of rule 803(4). See Tex.
R. Evid. 103(a)(1) (exception to contemporaneous objection to preserve error includes
objection made to evidence outside presence of jury). Therefore, this hearsay issue
is properly before us for review.
         Under rule of evidence 803(4),
[s]tatements made for purposes of medical diagnosis or treatment and
describing medical history, or past or present symptoms, pain, or
sensations, or the inception or general character of the cause or external
source thereof insofar as reasonably pertinent to diagnosis or treatment,
are admissible and excluded from the hearsay rule. 

Tex. R. Evid. 803(4). This exception is “based on the assumption that the patient
appreciates that the effectiveness of the treatment may depend on the accuracy of the
information provided . . . ." Moore v. State, 82 S.W.3d 399, 403 (Tex. App.–Austin
2002, pet. ref'd); see Fleming v. State, 819 S.W.2d 237, 247 (Tex. App.–Austin
1991, pet. ref’d). The following two-part test has been set out for admitting a
statement under this exception: (1) the declarant must make the statement for the
purpose of receiving treatment; and (2) the content of the statement must be such as
is reasonably relied on by a health care professional in treatment or diagnosis. Jones
v. State, 92 S.W.3d 619, 623 (Tex. App.–Austin 2002, no pet.). To satisfy the first
prong of the test, the declarant must have a motive consistent with obtaining medical
care, knowing that proper diagnosis or treatment depends on the veracity of such
statements. Id. To meet the second prong, the statement must concern facts
“reasonably pertinent to diagnosis or treatment,” such as medical history, symptoms,
or the cause or general character of the cause or external source. Id.
         Eight-year-old C.S. was taken to her pediatrician because of a sudden lack of
bladder control and unusual vaginal discharge. Her pediatrician suspected sexual abuse
and referred C.S. to the general pediatric unit at Driscoll Children's Hospital (Driscoll
Hospital). Dr. W. Jerry Reed, Director of Behavioral Developmental Services and
Adolescent Medicine, examined C.S. in the presence of C.S.'s mother, Dr. Reed's
partner, a resident, and a nurse or nurses. C.S. freely discussed topics of a general
nature with Dr. Reed, including, her name, address, and favorite color, but refused to
describe her symptoms. Dr. Reed explained that because young girls are often
intimidated by “a big fat guy like [himself],” after finishing with a physical examination,
social workers from the hospital take the patient's history, as occurred in this case. 
         After Dr. Reed and a nurse completed the physical examination, C.S. and her
mother were taken to meet with Quintanilla in her office, located in the same building
and on the same floor as Dr. Reed's office. Quintanilla told C.S. that, as part of the
team, she "was just to find out why [C.S.] was there" and "that Doctor Reed –– that
we would take care of her, and that she hadn't done anything wrong . . . ." 
Quintanilla believed C.S. understood Quintanilla’s purpose in talking with her. C.S.
understood it was intended to help her situation. During the course of the twenty-five
minute interview, Quintanilla asked C.S. if anybody had touched her. C.S. did not
answer, and appeared upset. Quintanilla told C.S. she did not have to talk, and asked
if she would rather write it down. C.S. agreed and wrote appellant's name on a piece
of paper. Quintanilla recounted this statement to the jury. Over appellant's
objections, the court admitted the testimony.
         Quintanilla further testified that after C.S. wrote appellant’s name on the paper:
[s]he began to cry, then she began to talk. She said that Steven Horner
had [touched] her when her mother had an accident, and when her
mother was at work. She stated that her mother worked late, and so it
happened at home when her mother was at work. . . . She stated that
he did it in November and maybe since July. From my notes I could tell
she said, 'He does it when mom is at work, and mom gets home after
nine o-clock. It hurts when he does it.'

C.S. did not elaborate as to what “it” was, but Quintanilla’s understanding was that
the child was there because of sexual assault or abuse.
         Quintanilla further testified that during the course of an interview, if someone
is identified who would hurt the child at home,


 she makes a referral to Children’s
Protective Services (CPS). Quintanilla did so in this case. She also contacted
Detective Sergeant Rick Brooks of the Aransas Pass Police Department. That same
night, Sergeant Brooks interviewed C.S. and her mother. Shortly thereafter appellant
was arrested.
         At the time of trial, Quintanilla had been employed as a medical social worker
at Driscoll Hospital for seven years. She held a bachelor's degree in sociology, and
was a graduate student studying in the area of social work. Quintanilla held a license
in social work, and her requirements for maintaining her license were current. 
Quintanilla explained she was part of the treatment team at the clinic. The treatment
team consisted of the doctor and nurse, the patient's guardian, and the social worker. 
Quintanilla’s role on the team was to get a family/social history on the patient. The
purpose of the social history was to assess the physical safety of the child at home.



         On cross-examination, Quintanilla testified that she did not discuss with C.S.
the importance of telling the truth. She did not clarify with C.S. whether the hurt she
was asking about was physical or emotional hurt. Although C.S. identified home as
where the events occurred, she did not tell Quintanilla where home was. Quintanilla
did not ask C.S. where she was touched or whether she had her clothes on when she
was touched.
         Appellant specifically contends C.S.'s hearsay statements were not admissible
at trial because Quintanilla was not a doctor.


 However, "Texas courts have allowed
non-physicians to testify under the medical diagnosis and treatment exception to
hearsay.” Gregory v. State, 56 S.W.3d 164, 182-83 (Tex. App.–Houston [14th Dist.]
2001, pet. dism'd), cert. denied, 155 L. Ed. 2d 667, 123 S. Ct. 1797 (2003) (citing
Puderbaugh v. State, 31 S.W.3d 683, 685 (Tex. App–Beaumont 2000, pet. ref’d)
(allowing clinical social worker to testify under rule 803(4); Gohring v. State, 967
S.W.2d 459, 461 (Tex. App.–Beaumont 1998, no pet.) (allowing play therapist, under
supervision of licensed psychologist, to testify child was abused by her father); Moyer
v. State, 948 S.W.2d 525, 527-28 (Tex. App.–Fort Worth 1997, pet. ref’d)
(concluding statements made by patient to paramedic were admissible); Macias v.
State, 776 S.W.2d 255, 258-59 (Tex. App.–San Antonio 1989, pet. ref’d)
(statements made to psychologist admissible because they were made for purpose of
medical diagnosis and treatment); Torres v. State, 807 S.W.2d 884, 886-87 (Tex.
App.–Corpus Christi 1991, pet ref’d) (finding emergency room nurse could testify as
to victim’s statement even though nurse was also collecting evidence)). Likewise,
Quintanilla’s status as a social worker does not disqualify her testimony.
         Moreover, under the facts of this case, Quintanilla’s qualifications do establish
her connection with the medical profession. Driscoll Hospital employed Quintanilla as
a medical social worker. She had been employed in that capacity for seven years. 
Quintanilla held a bachelor's degree in sociology and was a graduate student in the
area of social work. She was licensed as a social worker. Quintanilla explained she
assessed children for child abuse as part of the treatment team, which consisted of the
doctor and nurse, the patient's guardian, and the social worker. Quintanilla obtained
a social history on the patient, the purpose of which was to assess the physical safety
of the child at home. Furthermore, Quintanilla testified she interviewed C.S. only a
short time after Dr. Reed completed the physical examination. The interview room
was down the hall from the examination room. Based on this testimony, we conclude
the trial court could have reasonably determined that the evidence established a
medical care component as required by rule 803(4). See Tex. R. Evid. 803(4); cf.
Gohring, 967 S.W.2d at 461-64 (statements of CPS investigator not admissible absent
showing of medical care component to worker’s employment of which declarant is
aware).
         Additionally, Quintanilla told C.S. she wanted to find out why C.S. was there. 
She also told C.S. they would take care of her. Quintanilla believed C.S. understood
her purpose in talking with her, that it was intended to help her situation. The court
could have concluded C.S. made the statement to Quintanilla for the purpose of
receiving treatment to help her situation. See Jones, 92 S.W.3d at 622. The court
could also have determined that C.S. appreciated that the effectiveness of the
treatment depended on the accuracy of the information she provided. See Moore, 82
S.W.3d at 403. Accordingly, the first prong of the test has been satisfied. See
Jones, 92 S.W.3d at 623.
         The second prong addresses the crucial issue of whether the out-of-court
statement was reasonably pertinent to medical diagnosis or treatment. See id;
Gregory, 56 S.W.3d at 183 (citing Ziegler v. Tarrant County Child Welfare Unit, 680
S.W.2d 674, 680 (Tex. App.–Fort worth 1984, writ ref’d n.r.e.)). “Texas courts have
held that statements by a suspected victim of child abuse as to the causation and
source of the child’s injuries are admissible under rule 803(4).” Gregory, 56 S.W.3d
at 183 (citing Beheler v. State, S.W.3d 182.189 (Tex. App.–Fort Worth 1999, pet.
ref’d); Torres, 807 S.W.2d at 887). “[U]nlike ordinary medical problems, the
treatment of child abuse includes removing the child from the abusive setting. Thus,
the identity of the abuser is pertinent to the medical treatment of the child.” Fleming,
819 S.W.2d at 247 (citations omitted). Therefore, we conclude the child's statements
to Quintanilla identifying her abuser were reasonably pertinent to medical treatment. 
The second prong of the test is satisfied. See Jones, 92 S.W.3d at 622. Quintanilla's
testimony, specifically that testimony related to C.S.'s statements, was properly
admitted pursuant to rule 803(4).
C. Right of Confrontation
         Appellant also challenges the admission of Quintanilla’s testimony on the basis
that it violates his constitutional right of confrontation under the Sixth and Fourteenth
Amendments of the United States Constitution and article 1, section 10 of the Texas
Constitution. See U.S. Const. amends. VI & XIV; Tex. Const. art. I, § 10. The State
contends appellant waived this objection because he did not make it during the hearing
outside the presence of the jury, see Tex. R. Evid. 103(a)(1), and did not request
permission from the trial court for a running objection.


 See Sattiewhite v. State, 786
S.W.2d 271, 283 n.4 (Tex. Crim. App.–1989). We agree that appellant did not
preserve error on constitutional grounds. See Briggs v. State, 789 S.W.2d 918, 924
(Tex. Crim. App. 1990) (even constitutional error may be waived).
         However, even assuming appellant preserved this objection, not all out-of-court
statements are prohibited by the confrontation clause. Edwards v. State, 107 S.W.3d
107, 115 (Tex. App.–Beaumont 2003, no pet.) (citing Idaho v. Wright, 497 U.S. 805,
813-14 (1990)). If the statement falls within a firmly rooted hearsay exception,
reliability can be inferred without more. Id.; see Simpson v. State, 119 S.W.3d 262,
269 (Tex. Crim. App. 2003) (statement is per se reliable if falls within "firmly rooted"
exception to hearsay rule). The exception for a statement made for purposes of
medical diagnosis or treatment is "firmly rooted.” Edwards, 107 S.W.3d at 115 (citing
White v. Illinois, 502 U.S. 346, 356 n.8 (1992)). Thus, the admission of the
testimony under the medical diagnosis or treatment hearsay exception did not violate
appellant’s right of confrontation.
         Accordingly, we conclude the trial court's ruling was within the "zone of
reasonable disagreement." See Green, 934 S.W.2d at 101-02. As such, the court
did not abuse its discretion when it admitted C.S.'s out-of-court statements through
Quintanilla’s testimony. See id. Appellant’s fourth issue is overruled.VI. CONCLUSION
         Having addressed all issues in this appeal, we affirm the judgment of the trial
court.
                                                                        NELDA V. RODRIGUEZ
                                                                        Justice

Separate Opinion on Motion for Rehearing 
by Justice Castillo will follow.

Publish.
Tex. R. App. P. 47.2(b).

Opinion delivered and filed
this 19th day of February, 2004.